**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

VICTOR SARAVIA-PAGUADA,
                    *Petitioner,*

v.

ALBERTO R. GONZALES, Attorney
General,
                    *Respondent.*

No. 05-73098

Agency No.
A17-266-808

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
February 13, 2007—San Francisco, California

Filed May 21, 2007

Before: Ronald M. Gould and Johnnie B. Rawlinson,
Circuit Judges, and Alfred V. Covello,*
Senior District Judge.

Opinion by Judge Gould

*The Honorable Alfred V. Covello, Senior United States District Judge
for the District of Connecticut, sitting by designation.

5893

**COUNSEL**

Marc Van Der Hout, San Francisco, California, for the petitioner.

Edward A. Olsen, Assistant United States Attorney, San Francisco, California, for the respondent.

**OPINION**

GOULD, Circuit Judge:

In 1988, Petitioner, Victor Saravia-Paguada, a legal permanent resident ("LPR"), was convicted of several felonies in California, for which he served three years and two months in prison. After his release, Petitioner conceded deportability but requested discretionary relief under former § 212(c) of the Immigration and Naturalization Act ("INA"). While his deportation proceedings were pending, in 1992 Petitioner was again convicted for felony offenses and received a sentence of six years and four months, which reflected in part a three-year recidivist enhancement. Petitioner served three years and three months of this sentence. In 2002, the Board of Immigration Appeals ("BIA") summarily affirmed the immigration judge's ("IJ") pretermitting of relief under former § 212(c) because, by an intervening act of Congress, eligibility for relief was barred for any alien who has been convicted of "one or more aggravated felonies and has served for such felony or felonies" a term of imprisonment of at least five years. *See* § 306(a)(10) of the Miscellaneous and Technical Immigration and Naturalization Amendments, Pub. L. No. 102-232, 105 Stat. 1733, 1751 (effective Dec. 12, 1991) ("Technical Amendments") (modifying § 511(a) of the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, 5052 (effective Nov. 29, 1990) ("IMMACT")).[1] Petitioner

---

[1] When referring generically to the eligibility bar to those aliens who served at least five years for aggravated felonies under these amendatory

petitions for review of the BIA's summary affirmance, claiming that time served pursuant to the recidivist statute should not have been counted for purposes of the IMMACT bar, and, in the alternative, that applying the IMMACT bar to the 1988 sentence had an impermissibly retroactive effect on the criminal conduct underlying Petitioner's convictions. We deny the petition for review.

## I

The Petitioner is a Honduran national who has been an LPR in the United States since 1966 and has returned to Honduras only once for a brief stay. Petitioner asserts that he was raised in the United States from an early age and has no appreciable ties to his native country. Petitioner also asserts that his mother, daughter and siblings are either U.S. citizens or LPRs who live in the United States.

On October 19, 1988, a jury in California convicted Petitioner of the following offenses: (1) possession of cocaine for sale in violation of California Health and Safety Code § 11351; (2) possession for sale of methamphetamine in violation of California Health and Safety Code § 11378; (3) conspiracy to sell cocaine and methamphetamine in violation of California Penal Code § 182.1 and California Health and Safety Code §§ 11352 and 11379; and (4) possession of a throwing star in violation of California Penal Code § 12020(c). The superior court in Santa Clara County imposed a prison term of five years and eight months, of which Petitioner served three years and two months.

On May 2, 1990, the former Immigration and Naturalization Service ("INS") initiated deportation proceedings under

_____

statutes, we use the denomination "IMMACT provisions" or "IMMACT bar" where there is no significant difference between the two statutory versions.

former § 241(a)(11) of the INA, 8 U.S.C. § 1251 (a)(11), in connection with Petitioner's conviction for possession of cocaine for sale. Conceding deportability, Petitioner sought discretionary relief under former § 212(c) of the INA, 8 U.S.C. § 1182(c) (1996). While the deportation proceedings were pending, however, Petitioner was convicted on June 30, 1992, after a guilty plea, for violation of California Health and Safety Code §§ 11378 (possession for sale of methamphetamine) and 11358 (cultivation of marijuana). This time the Santa Clara County superior court imposed a sentence of six years and four months, which in part reflected a three-year sentencing enhancement pursuant to a recidivist statute, California Health and Safety Code § 11370.2, in light of Petitioner's prior convictions. Petitioner served three years and three months.

On February 23, 1996, the IJ pretermitted § 212(c) relief because he determined that Petitioner served in aggregate six years and five months for the 1988 and 1992 aggravated felony convictions.[2] The IJ rested his decision on an intervening amendment to § 212(c) that barred relief for any alien who

---

[2]In the briefing, Petitioner asserts that he served only two years and one month for the 1988 convictions. This calculation is belied by Petitioner's testimony before the IJ and the state court criminal records. Before the IJ, Petitioner attempted to shorten the period of incarceration for the 1988 convictions by calculating from the time of his sentencing in 1988 to reach the figure of two years and one month. The IJ rejected Petitioner's contention that pre-trial or pre-sentencing detention did not count as "time served," concluding that the theory was foreclosed under *Matter of Valdovinos*, 18 I. & N. Dec. 343, 344 (1982). Based on Petitioner's prison records, the IJ found that Petitioner entered the California prison system on November 17, 1987 at the time of his arrest and was paroled on January 14, 1991. The resulting total is three years, one month and twenty-seven days, or nearly three years and two months as the IJ concluded. As for the 1992 convictions, Petitioner testified consistent with his prison records that he had been arrested on April 7, 1992 and released from prison on August 4, 1995, indicating roughly a three-year and four-month term of incarceration. However, the IJ settled on a more conservative figure of three years and three months.

has been convicted of "one or more aggravated felonies and has served for such felony or felonies" a term of imprisonment of at least five years.[3] *See* § 306(a)(10) of the Technical Amendments. The IJ recited Petitioner's convictions and acknowledged that no party disputed that the convictions were accurately characterized as aggravated felonies. The IJ also rejected Petitioner's interpretation of § 306(a)(10) that time served pursuant to the three-year sentencing enhancement due to his 1992 convictions could not be counted toward the five-year IMMACT bar. Noting that "the enhancement itself cannot be regarded as a conviction independent of other convictions," the IJ concluded that it was indisputable that the "enhancement . . . imposed on Mr. Saravia in 1992 was part of the sentencing for the conviction . . . for the violation of California Health and Safety Code § 11378."

---

[3]We note as background that Petitioner's convictions occurred during a period in the development of this country's immigration laws, which increasingly restricted availability of relief for LPRs convicted of felony offenses. Previous to IMMACT's passage, "§ 212(c) allowed the Attorney General to grant discretionary waivers of relief from deportation for aliens who were lawful permanent residents of the United States and who had accrued seven consecutive years of lawful unrelinquished domicile in the United States." *Toia v. Fasano*, 334 F.3d 917, 918 (9th Cir. 2003). After Petitioner's 1988 convictions, Congress made relief unavailable for an alien "who has been convicted of an aggravated felony and served a term of imprisonment at least five years." *See* § 511(a) of the IMMACT. In 1991, Congress inserted the "for such felony or felonies" language into § 511(a) of the IMMACT to "clarify that the bar [to § 212(c) relief] applied to multiple aggravated felons whose aggregate terms of imprisonment exceeded five years." *See Toia*, 334 F.3d at 919 n.1; § 306(a)(10) of the Technical Amendments. In 1996, Congress eliminated § 212(c) relief for convictions of controlled-substance violations and aggravated felonies regardless of the amount of time served. *See* § 440(d) of the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, 1277 (1996). Finally, under the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub. L. No. 104-208, § 304(b), 110 Stat. 3009, 3009-597 (1996), a waiver of relief from deportation under § 212(c) was repealed and replaced with cancellation of removal, which is unavailable to any alien with an aggravated felony conviction. *See* 8 U.S.C. § 1229.

The BIA affirmed the IJ on March 24, 1997, but remanded the case with leave for Petitioner to file a motion to reopen under *Matter of Soriano*, 21 I. & N. Dec. 516 (A.G. 1996).[4] On May 30, 2002, the IJ determined that *Matter of Soriano* did not apply to Petitioner's circumstances and ordered him deported under the previous findings from the February 26, 1996 hearing. The BIA affirmed the decision summarily on September 25, 2002. Under § 309(c)(4)(G) of IIRIRA, we then dismissed Petitioner's initial petition for review for lack of jurisdiction.

After Petitioner was ordered to appear for deportation, he filed a petition for writ of habeas corpus on September 17, 2004 in the Northern District of California, asserting that the IJ erroneously concluded that § 212(c) relief was unavailable. The district court denied the habeas petition because Petitioner had served more than five years for his aggravated felony convictions, which, "under the plain language of the [IMMACT]," barred § 212(c) relief. After Petitioner filed a motion to amend the judgment under Federal Rule of Civil Procedure 59(e), Congress passed the REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231 (2005), which required the district court to transfer the case to us for consideration of the habeas claims as a petition for review.[5] *See* 8 U.S.C. § 1252(a)(2)(D)(5); *Smolniakova v. Gonzales*, 422 F.3d 1037, 1044 (9th Cir. 2005).

## II

Petitioner first argues that the IJ erroneously included time served pursuant to the three-year sentence enhancement under

---

[4]*Matter of Soriano*, allowed repleading in cases where a petitioner relied on the availability of § 212(c) relief in conceding deportability before passage of § 440(d) of AEDPA. *See* 21 I. & N. Dec. at 520.

[5]Under the REAL ID Act, we retain jurisdiction over "constitutional claims or questions of law raised upon a petition for review filed with an appropriate court." *See* 8 U.S.C. § 1252(a)(2)(D).

California Health and Safety Code § 11370.2, when conclud-
ing that Petitioner had served more than five years for his
aggravated felony convictions.[6] Petitioner claims that our
authority in *United States v. Corona-Sanchez*, 291 F.3d 1201
(9th Cir. 2002), and *Rusz v. Ashcroft*, 376 F.3d 1182 (9th Cir.
2004), supports his contention.[7]

Petitioner's reliance on *Corona-Sanchez* and *Rusz* is mis-
placed. In *Corona-Sanchez*, we rejected the Government's
theory that a conviction for petty theft under California Penal
Code §§ 484(a) and 488, which resulted in a two-year sen-
tence under California Penal Code § 666 (a recidivist statute),
was an "aggravated felony" for purposes of increasing the
penalty for a violation of 8 U.S.C. § 1326(a) (being a deported
alien found in the United States). *Corona-Sanchez*, 291 F.3d
at 1208-09. We reached this decision because *Taylor v.
United States*, 495 U.S. 575 (1990), required a court in the
context of federal sentence enhancements to "examine the
prior crimes by considering the statutory definition of the
crimes categorically, without reference 'to the particular facts

---

[6]As a remedy, Petitioner asks us to prorate the time served for the 1992
substantive offenses as separate from time served under the three-year
enhancement. Petitioner reckons that of the 76-month sentence for the
1992 convictions, 36 months are attributable to the sentencing enhance-
ment and 40 months are attributable to the substantive offenses. Petitioner
calculates that 47% of the 39 months served should be prorated such that
only "one year and 6.3 months" may be counted for purposes of the five-
year prison term that bars relief. Thus Petitioner calculates that his "time
served" amounts to only four years and 8.3 months so as to escape the
IMMACT bar to § 212(c) eligibility.

[7]When the BIA does not perform an independent review of the IJ's
decision we review the IJ's decision. *See Khup v. Ashcroft*, 376 F.3d 898,
902 (9th Cir. 2004). We review "determination of purely legal questions
regarding the Immigration and Nationality Act de novo," *Kankamalage v.
INS*, 335 F.3d 858, 861 (9th Cir. 2003), "the same standard we apply when
reviewing a district court's decision to deny a habeas petition . . . [except
that] we now review the BIA's decision, not the district court's orders."
*Alvarez-Barajas v. Gonzales*, 418 F.3d 1050, 1053 (9th Cir. 2005) (inter-
nal citation omitted).

underlying those convictions' . . . [and] without considering separate recidivist sentencing enhancements." *Corona-Sanchez*, 291 F.3d at 1208-09 (quoting *Taylor*, 495 U.S. at 600). We recognized this distinction because " 'recidivism does not relate to the commission of the offense.' " *Id.* at 1209 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 488 (2000).

In *Rusz*, we likewise declined to characterize a petty theft conviction under California Penal Code §§ 484(a) and 488 as an offense "for which a sentence of one year or longer may be imposed" under 8 U.S.C. § 1227(a)(2)(A)(i)(II), which barred appellate jurisdiction over a final order of removal, where a statutory maximum sentence of six months was enhanced to three years under § 666. *Rusz*, 376 F.3d at 1183, 1185. In that case we held that the *Taylor* categorical approach required us to separate the substantive misdemeanor offense from the sentencing enhancement in considering the applicability of INA removal provisions. *Id.* at 1185.

Finally, our recent decision in *United States v. Rodriquez*, 464 F.3d 1072 (9th Cir. 2006), is congruent with this line of authority and does not assist Petitioner's position. In *Rodriquez*, we considered for federal sentencing enhancement purposes whether a prior conviction for delivery of a controlled substance, in violation of Washington Revised Code § 9A.20.021(1)(c), which carried a maximum term of five years for the substantive crime, but was enhanced to ten years as a "second or subsequent offense[ ]" under a recidivism provision, qualified as a "serious drug offense" under the pertinent definition in the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924 *et seq.*, namely " 'an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . *for which a maximum term of imprisonment of ten years or more is prescribed by law*.' " *Id*. at 1079 (quoting 18 U.S.C. § 924(e)(2)(A)(ii)) (emphasis in original). Following *Corona-Sanchez*, we held that Rodriquez's prior controlled-substance violation could not be classified as a "serious drug offense,"

though he received an enhanced sentence of ten years under the recidivist statute, because "recidivism does not relate to the commission of the offense." *Id.* at 1082 (internal quotation marks omitted).

**[1]** Here, unlike in *Corona-Sanchez*, *Rusz*, and *Rodriquez*, we do not consider whether or not Petitioner committed certain past crimes, such as an "aggravated felony" or a "serious drug offense," the *nature* of which might give rise to adverse consequences attaching to a present conviction. For this reason, the traditional concern that recidivism should not inform the nature of an offense, *cf. Apprendi*, 530 U.S. at 488, is not at play. It is undisputed that Petitioner's 1988 and 1992 offenses were properly characterized as "aggravated felonies." The focus here is on calculating the *amount* of time served *on account* of the felony convictions, which is an inquiry not related to the nature of the offense under the *Taylor* categorical approach and absent from our analysis in *Corona-Sanchez* and its progeny. The question here is straightforward: whether Petitioner "served for such felony or felonies a term of imprisonment of at least 5 years." *See* § 306(a)(10) of the Technical Amendments.

Having rejected the applicability of *Corona-Sanchez*, *Rusz*, and *Rodriquez* to this context, we recur to the plain meaning of § 306(a)(10) of the Technical Amendments. *See Altamirano v. Gonzales*, 427 F.3d 586, 592 (9th Cir. 2005) ("The starting point for our interpretation of a statute is always its language. . . . We begin by looking to the plain meaning of the terms at issue.") (internal citation and quotation marks omitted)). "If a statute is silent regarding an issue, we will defer to the interpretation of the administrative agency charged with implementing the statute." *United States v. Lopez-Perera*, 438 F.3d 932, 933 (9th Cir. 2006). However, we are not obligated to accept an interpretation clearly contrary to the plain meaning of the statute. *See Chowdhury v. INS*, 249 F.3d 970, 972 (9th Cir. 2001).

In interpreting § 306(a)(10), the IJ here found that "the enhancement itself cannot be regarded as a conviction independent of other convictions," concluding that the "enhancement . . . imposed . . . was part of the sentencing for the conviction . . . for the violation of California Health and Safety Code § 11378." Petitioner contends that this finding was in error because the prepositional phrase "for such felony or felonies" inserted into the IMMACT provision under § 306(a)(10) qualifies any time served so as to bracket out time served pursuant to an enhancement as distinct from the aspect of the sentence attributable to the substantive offense. This reading is unpersuasive.

**[2]** Nothing in the language of § 306(a)(10) suggests that an enhanced sentence may not be imposed "for such felony or felonies." As the IJ reasonably concluded, the enhancement is not separable from the sentence. Rather, the enhancement is, by definition, "an additional term of imprisonment added to the base term," *see People v. Wims*, 895 P.2d 77, 83 (Cal. 1995) (internal quotation marks and citation omitted), which is imposed because of some aggravating circumstance such as recidivism. Because the terms of the statute require a court only to determine the ultimate amount of time served, it is immaterial whether a sentencing enhancement may have increased the base term. Moreover, Petitioner's interpretation based on a misapplication of *Corona-Sanchez* also creates practical difficulties Congress cannot have intended. Under Petitioner's approach, an IJ, when calculating the time served, would be forbidden from examining circumstances underlying the substantive offense, including recidivist concerns and any other aggravating factors that informed the sentencing court. A requirement to prorate the "time served" based on any conceivable aggravating factors a sentencing judge might apply would be unworkable because the IJ would be forced to contrive proportionate values for each aggravating factor, then deduct those artificial values from the imposed sentence. We reject such an unwieldy approach that is contrary to § 306(a)(10)'s plain meaning.

**[3]** In a related theory, Petitioner argues that the congressional act itself of amending the IMMACT under § 306(a)(10) to add the prepositional phrase "for such felony or felonies" exhibited an intent that the time served be calculated without regard to sentencing enhancements. Petitioner's argument runs counter to our authority in *Toia v. Fasano*, 334 F.3d 917 (9th Cir. 2003). In *Toia*, we acknowledged that the intent of § 306(a)(10) was to "clarify that the bar [to § 212(c) relief] applied to multiple aggravated felons whose aggregate terms of imprisonment exceeded five years," *see id.* at 919 n.1, rather than basing ineligibility on a prison term of at least five years pursuant to a single conviction. *See De Osorio v. INS*, 10 F.3d 1034, 1037 n.2 (4th Cir. 1993) ("The language of this amendment to § 212(c) was further revised in [§ 306(a)(10)] to clarify that the five-year term could be served for multiple convictions."). Petitioner cites no relevant authority or legislative history that the congressional intent was otherwise.[8] At most, Petitioner points to a proposed amendment to the INA in the Comprehensive Immigration Reform Act of 2006, which makes explicit that time served under sentencing enhancements may be considered for determining immigration consequences.[9] According to Petitioner, this unenacted

---

[8]The congressional record is free of specific reference to § 306(a)(10). *See* 137 CONG. REC. S18244 (daily ed. Nov. 26, 1991) (stating Senator Kennedy's description of the Technical Amendments to the IMMACT as "non-controversial but necessary" without mentioning § 306(a)(10)); *see also* Iris Gomez, *The Consequences of Nonappearance: Interpreting New Section 242b of the Immigration and Nationality Act*, 30 San Diego L. Rev. 75, 94 -95 (1993) (reciting legislative history of the Technical Amendments without noting particular rationale for enactment of § 306(a)(10)).

[9]This unenacted federal legislation concerns the following proposed amendment to the definition of "aggravated felony" under 8 U.S.C. § 1101(a)(43): "[T]he term 'aggravated felony' applies to an offense described in this paragraph, whether in violation of Federal or State law . . . for which the term of imprisonment was completed within the previous 15 years, *even if the length of the term of imprisonment is based on recidivist or other enhancements . . . .*" Comprehensive Immigration Reform Act, S.R. 2611, 109th Cong. § 203 (2006) (emphasis added).

bill reflects the fact that under the current law sentencing enhancements may not be included in calculating time served in determining the availability of § 212(c) relief. Even if § 306(a)(10) were ambiguous, this theory runs afoul the canon of construction that "[w]here . . . an act is ambiguous, an amendment thereto is an indication that it is intended to clarify, rather than change, the existing law." *See Bedoni v. Navajo-Hopi Indian Relocation Comm'n*, 878 F.2d 1119, 1121 (9th Cir. 1989) (internal quotation marks and citation omitted).

**[4]** Under the plain meaning of the IMMACT provisions, we conclude that an IJ may include time served under a recidivist statute or any other sentencing enhancement when considering eligibility for relief under former § 212(c). In pretermitting relief, the IJ reasonably interpreted this statutory command and properly calculated the time served based on both the sentence attributable to the 1992 substantive offenses and the sentencing enhancement under California Health and Safety Code § 11370.2.

## III

In his alternative claim, Petitioner argues that the IJ's application of the IMMACT bar to his 1988 sentence had an impermissibly retroactive effect by attaching new legal consequences to the criminal conduct underlying the convictions.[10]

The Government claims that Petitioner waived his retroactivity argument under 8 U.S.C. § 1252(d)(1) because it was not raised before the IJ or BIA. Petitioner responds that we have jurisdiction over the retroactivity claim because due process concerns are implicated. Alternatively, Petitioner argues that it would have been futile to assert such a claim because at the time he sought administrative review, our authority in

---

[10]"We review de novo whether a statute may be applied retroactively." *Scott v. Boos*, 215 F.3d 940, 942 (9th Cir. 2000).

*Samaniego-Meraz v. INS*, 53 F.3d 254 (9th Cir. 1995), *over-ruled by*, *Toia*, 334 F.3d 917, precluded the BIA from considering the retroactivity claim.

As a general rule, we "may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1). However, "due process claims . . . are exempt from this administrative exhaustion requirement." *Garcia-Ramirez v. Gonzales*, 423 F.3d 935, 938 (9th Cir. 2005) ("Retroactivity challenges to immigration laws implicate legitimate due process considerations that need not be exhausted in administrative proceedings because the Board of Immigration Appeals cannot give relief on such claims."). The Government's exhaustion defense is thus foreclosed by *Garcia-Ramirez*.[11]

Proceeding to the merits, we are guided by our circuit's interpretation of the analytical framework for retroactivity established in *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), and as applied in the immigration context in *INS v. St. Cyr*, 533 U.S. 289 (2001). *See generally Armendariz-Montoya v. Sonchik*, 291 F.3d 1116 (9th Cir. 2002).

**[5]** Under the test in *Landgraf*, when a statutory provision lacks an effective date, we first ask whether Congress has prescribed its temporal reach. *See* 511 U.S. at 280.[12] "If there is no congressional directive on the temporal reach of a statute, we determine whether the application of the statute to the conduct at issue would result in a retroactive effect." *Martin v. Hadix*, 527 U.S. 343, 352 (1999) (internal quotation marks

---

[11]Because *Garcia-Ramirez* exempts Petitioner from the exhaustion requirement, we need not address his futility argument.

[12]Here, it is undisputed that the IMMACT provision is ambiguous with respect to whether Congress intended to apply the five-year eligibility bar to aliens whose convictions occurred before the statute's effective date. *See Toia*, 334 F.3d at 920 ("Section 511(a) lacks clear, strong language, . . . which can be subject to only one interpretation.").

omitted). Absent an unmistakable congressional directive, we may determine that a statute is impermissibly retroactive if it "takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past." *Landgraf*, 511 U.S. at 269 (internal quotation marks and citation omitted).

**[6]** In the immigration context, the Supreme Court in *St. Cyr* concluded that "IIRIRA's elimination of any possibility of § 212(c) relief for people who entered into plea agreements with the expectation that they would be eligible for such relief clearly 'attaches a new disability, in respect to transactions or considerations already past.' " 533 U.S. at 321 (quoting *Landgraf*, 511 U.S. at 269). Central to the *St. Cyr* analysis was the nature of the plea agreement and a petitioner's reliance on the pre-IRRIRA availability of § 212(c) relief:

> Plea agreements involve a *quid pro quo* between a criminal defendant and the government. . . . In exchange for some perceived benefit, defendants waive several of their constitutional rights (including the right to a trial) and grant the government numerous tangible benefits, such as promptly imposed punishment without the expenditure of prosecutorial resources. . . . There can be little doubt that, as a general matter, alien defendants considering whether to enter into a plea agreement are acutely aware of the immigration consequences of their convictions. . . . [P]reserving the possibility of such relief would have been one of the principal benefits sought by defendants deciding whether to accept a plea offer or instead to proceed to trial.

*Id.* at 321-23 (internal quotation marks, citations, and footnotes omitted).

In our circuit, we have generally limited *St. Cyr* to the factual context of a guilty plea. In *Toia*, we considered a chal-

lenge by an LPR to the retroactive application of the bar to
§ 212(c) relief under § 511(a) of the IMMACT after the peti-
tioner was convicted of a drug-related aggravated felony on
a guilty plea in 1989 and sentenced to ten years imprison-
ment. 334 F.3d at 918. In that case we held that *St. Cyr* com-
pelled making § 212(c) relief available to the alien despite the
pre-IMMACT convictions because his guilty plea evinced the
alien's reliance on relief under the then-existing law. *Id.* at
921 ("Extinguishing the availability of § 212(c) relief for
aliens who pleaded guilty . . . upsets 'familiar considerations
of fair notice, reasonable reliance, and settled expecta-
tions.' ") (quoting *St. Cyr*, 533 U.S. at 323).

[7] Outside of the plea bargain context, however, we have
declined to invalidate retroactive elimination of § 212(c)
relief. In *Armendariz-Montoya*, we held that there was no
impermissibly retroactive effect in applying § 440(d) of
AEDPA to a petitioner who was convicted pre-AEDPA after
a jury trial for a drug-related aggravated felony, but was still
in deportation proceedings when AEDPA was enacted. *See*
291 F.3d at 1121-22. In that case, we reasoned that aliens who
chose to go to trial "cannot plausibly claim that they would
have acted any differently if they had known" about the elimi-
nation of § 212(c) relief.[13] *Id.* at 1121. In concluding that such
a claimed reliance interest is *per se* unreasonable, we reaf-
firmed a narrow reading of *St. Cyr* and excluded categorically
claims for § 212(c) relief outside the guilty plea context.[14] *Id.*

---

[13]Our decision in *Armendariz-Montoya* quoted Judge Posner's rejection
of a similar argument:

> It would border on the absurd to argue that these aliens might
> have decided not to commit drug crimes, or might have resisted
> conviction more vigorously, had they known that if they were not
> only imprisoned but also, when their prison term ended, ordered
> deported, they could not ask for a discretionary waiver of depor-
> tation.

291 F.3d at 1121 (quoting *LaGuerre v. Reno*, 164 F.3d 1035, 1041 (7th
Cir. 1998)).

[14]Recently, in a case involving a retroactive application of the aggra-
vated felon bar under § 304(b) of IIRIRA, we likewise rejected an argu-

at 1122 ("Armendariz pleaded not guilty and elected a jury trial. Therefore, application of § 440(d) does not result in any retroactive effect.").

The Government contends that *Landgraf*'s second prong, as applied under *St. Cyr* and *Toia*, can be distinguished from the case here, and that the authority in *Armendariz-Montoya* forecloses Petitioner's theory, because Petitioner did not participate in the *quid pro quo* of the plea bargain and thus cannot have reasonably relied on the availability of discretionary § 212(c) relief prior to the jury trial conviction in 1988. Disregarding the significance of a guilty plea, Petitioner replies that the IMMACT provisions have an impermissible retroactive effect because, as applied to the 1988 convictions, the statutory change subjects him to new legal consequences in regard to his past conduct, i.e. the commission of the underlying criminal acts that gave rise to his 1988 convictions. Petitioner also replies that *Armendariz-Montoya* is not controlling because that case pertained to the retroactive application of § 440(d) of AEDPA, where the alien was convicted pre-AEDPA and requested § 212(c) relief after the effective date of AEDPA. As such, Petitioner argues that *Armendariz-Montoya* did not address the theory that the bar under IMMACT cannot be retroactively applied to the 1988 convictions and the underlying criminal conduct. We agree with the Government.

---

ment that § 212(c) relief could be available for an alien convicted pre-IIRIRA by guilty plea of the aggravated felony of armed imprisonment where in 1978 he seized several foreign nationals at a consulate in Chicago. *See Kelava v. Gonzales*, 434 F.3d 1120, 1122-24 (9th Cir. 2006). Although we ultimately denied § 212(c) relief based on AEDPA's independent terrorist activity ground, *id.* at 1126, we expressly affirmed the reasoning of *Armendariz-Montoya* and emphasized that the Supreme Court in *St. Cyr* was "concerned that the alien had detrimentally relied on the availability of § 212(c) relief in entering the plea, giving rise to 'settled expectations' that would be disrupted by the retroactive application of IIRIRA § 304(b)." *Id.* at 1124 (citing *St. Cyr*, 533 U.S. at 323-24).

First, Petitioner's attempt to distinguish *Armendariz-Montoya* based on its varying procedural posture from the case here is unavailing. There is no meaningful difference between Petitioner's and Armendariz's circumstances. Petitioner was convicted in 1988. On May 2, 1990, he was placed in deportation proceedings and requested § 212(c) relief. However, due to Petitioner's 1992 convictions, his claim for § 212(c) relief could not be adjudicated until February 26, 1996, after the IMMACT effective date, at which time his 1992 sentence pushed Petitioner over the five-year limit. Armendariz was convicted of a felony offense in September 1995, was ordered to show cause on April 5, 1996 why he should not be deported, and in April 1997 requested § 212(c) relief after the effective date of AEDPA. *Armendariz-Montoya*, 291 F.3d at 1118. In both cases, eligibility for § 212(c) relief was withdrawn based on a statute retroactively applied after the aliens had committed acts that resulted first in criminal convictions and then in concessions of deportability from which both sought previously available forms of § 212(c) relief. The fact that different statutes were imposed to bar eligibility is inconsequential for retroactivity analysis so as to distinguish *Armendariz-Montoya*.

[8] Petitioner's main contention that we must consider as past relevant conduct the commission of the underlying crime, irrespective of any specific reliance on the pre-IMMACT law, is squarely foreclosed by *Armendariz-Montoya*. Although *Armendariz-Montoya* did not expressly designate the past relevant conduct, it can be readily inferred from the decision that the past relevant conduct is an alien's decision whether to enter a guilty plea or to proceed to trial, and not the commission of the underlying criminal conduct. *See* 291 F.3d at 1121 ("If those aliens had been aware of § 440(d) at the time of plea, *they might have elected* to proceed to trial in lieu of pleading guilty.") (emphasis added); *see also Ponnapula v. Ashcroft*, 373 F.3d 480, 494 (3d Cir. 2004) ("This focus [on the decision] is logical because the reliance interest of an alien who accepts a plea agreement arises at the time the choice is

made to accept the agreement. Generally speaking, reliance interests (in the legal sense) arise because some choice is made evincing reliance.") (citing *Restatement (Second) of Contracts* § 90 (1981) (requiring "action or forbearance" to invoke promissory estoppel)).

[9] Here, Petitioner makes only the unremarkable assertion that "pre-IMMACT alien defendants might either accept a plea or decide to go to trial" where, under the prior law, any sentence the alien received would not be a factor for purposes of determining the availability of § 212(c) relief. *Armendariz-Montoya* negated the premise that new legal consequences arising from a change in statutory regime alone was sufficient to invalidate the retroactive application of the IMMACT provision. *See* 291 F.3d at 1121 (holding that retroactive application of the bar to discretionary relief under § 440(d) of AEDPA for any aggravated felony regardless of time served was permissible *despite* § 440(d)'s displacement of IMMACT's five-year rule); *see also Garcia-Ramirez*, 423 F.3d at 953-54 (rejecting theory that mere change in "statutory structure" could produce an impermissible retroactive effect) (Gould, J., concurring). Under the logic of *Armendariz-Montoya*, Petitioner's claimed reliance interest is *per se* unreasonable because of the " 'absurd' " argument that aliens " 'might have decided not to commit drug crimes, or might have resisted conviction more vigorously, had they known that . . . they could not ask for a discretionary waiver of deportation.' " *See Armendariz-Montoya*, 291 F.3d at 1121 (quoting *LaGuerre*, 164 F.3d at 1041).[15]

---

[15]Although the Third Circuit has not confined its retroactivity inquiry to the *quid pro quo* of a guilty plea, it has recognized the validity of *LaGuerre* where an alien might have only an "attenuated" reliance interest in previously available § 212(c) relief because of the law's "causal remoteness" to one's decision-making at the time he commits the underlying offense. *See Ponnapula*, 373 F.3d at 495-496 n.14 (noting that the Seventh Circuit in *LaGuerre* "properly" recognized the absurdity of such a claim).

Equally unpersuasive is Petitioner's claim that the Government's emphasis on *Armendariz-Montoya* is inapposite because that case is at odds with *Landgraf*, 511 U.S. 244, and its progeny. In addition to *Landgraf*, Petitioner relies on *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939 (1997), for the proposition that a court should only examine whether a retroactive application of the new law alters the legal consequences of past relevant conduct, without scrutinizing a particular group's reliance on the former law. It is beyond dispute that these cases did not emphasize a reasonable reliance interest.[16] However, a reliance interest is not inconsistent with this Supreme Court authority. *See Landgraf*, 511 U.S. at 270 ("The conclusion that a particular rule operates 'retroactively' comes at the end of a process of judgment concerning the nature and extent of the change in the law *and the degree of connection between the operation of the new rule and a relevant past event*.") (emphasis added). Petitioner overlooks, moreover, that the central focus of *Hadix* and *St. Cyr*, both of which post-date *Landgraf* and *Hughes Aircraft*, was the party's reliance interest. In *Hadix*, the Supreme Court held that an amendment that affected the hourly fee recoverable by attorneys engaged in post-judgment monitoring in prison reform suits was impermissibly retroactive where it reduced their hourly rate for work performed before the effective date of the amendment, *see* 527 U.S. at 347, 360-61; conversely, however, the *Hadix* court rejected any impermissible effect for work performed after the effective date of the

---

[16]In *Landgraf*, the Supreme Court did not inquire into a defendant business owner's reliance on the previous statutory framework where the defendant challenged the retroactive application of provisions in the Civil Rights Act of 1991 that authorized prevailing plaintiffs to recover compensatory and punitive damages for certain violations of Title VII of the Civil Rights Act of 1964. *See* 511 U.S. 248-49. Likewise, in *Hughes Aircraft*, the Supreme Court held that the elimination of certain defenses to *qui tam* suits under the False Claims Act could not be applied retroactively to Hughes Aircraft without requiring a showing that Hughes Aircraft, or similarly situated government contractors, relied on the eliminated defense to its detriment. 520 U.S. at 950.

amendment where attorneys claimed only that they could not ethically withdraw from the case. *Id.* at 361. In acknowledging a reasonable reliance standard, the *Hadix* court reasoned: "To impose . . . new standards now, for work performed before the [amendments] became effective, would upset the reasonable expectations of the parties"; whereas "[a]fter [the effective date], any expectation of compensation at the [pre-amendment] rates was unreasonable." *Id.* at 360. The Supreme Court in *St. Cyr* similarly highlighted a reliance interest in an alien's *quid pro quo* expectations at the plea bargain. 533 U.S. at 323. In light of this authority, we reject Petitioner's position that our emphasis on an alien's reasonable reliance on a prior law is inconsistent with Supreme Court precedent.

In a final effort to avoid the force of *Armendariz-Montoya*, Petitioner argues that the Supreme Court's decision in *Fernandez-Vargas v. Gonzales*, 126 S. Ct. 2422 (2006), overruled our controlling authority. In *Fernandez-Vargas*, the Supreme Court addressed the reinstatement provisions for removal orders under § 241(a)(1) of IIRIRA, which displaced a previous statutory exemption of certain classes of illegal reentrants and authorized the removal of any alien under a previous deportation order entered after the time of illegal reentry. 126 S. Ct. at 2426. The Supreme Court concluded that Fernandez-Vargas, who had illegally reentered the United States in 1982 well before the advent of § 241(a)(1), suffered no retroactive effect of the sterner reinstatement provisions because unlike the past, completed conduct of the *quid pro quo* plea deal in *St. Cyr*, "the alien's choice to continue his illegal presence, after illegal reentry and after the effective date of the new law, [is the conduct] that subjects him to the new and less generous legal regime, not a past act that he is helpless to undo up to the moment the Government finds him out." *Id.* at 2432. Rejecting Fernandez-Vargas's claims that he would have had recourse to certain forms of discretionary relief but for application of § 241(a)(1), the Supreme Court stated:

These putative claims to relief are not 'vested rights,' a term that describes something more substantial than inchoate expectations and unrealized opportunities. . . . Fernandez-Vargas's claim to such relief was contingent, and it was up to him to take some action that would elevate it above the level of hope. It is not that these forms of relief are discretionary, . . . it is rather that before IIRIRA's effective date Fernandez-Vargas never availed himself of them or took action that enhanced their significance to him in particular, as St. Cyr did in making his quid pro quo agreement.

*Id.* at 2432 n.10 (internal citations and quotation marks omitted). Contrary to Petitioner's contention, the *Fernandez-Vargas* decision thus reinforces the central premise in *Armendariz-Montoya* that an alien must demonstrate some affirmative reliance on a previously available immigration benefit to show impermissible retroactivity.

**[10]** Under *Armendariz-Montoya*, an alien's *decision* to enter a guilty plea or proceed to trial is the past relevant conduct for purposes of *Landgraf* analysis, not the commission of the underlying crime. We hold that application of the IMMACT provisions to time served for criminal sentences that stemmed from jury convictions pre-dating both §§ 511(a) of the IMMACT and 306(a)(10) of the Technical Amendments creates no impermissibly retroactive effect. The IJ, therefore, did not erroneously include the three years and two months served for the 1988 convictions in concluding that § 212(c) relief was barred because of IMMACT's rule that aliens who served five years or more for one or more aggravated felony convictions may not gain discretionary waiver of relief from deportation.

**PETITION DENIED.**