**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JACQUELINE TYSON, aka Jacqueline
M. Ableman,
                          *Petitioner,*

            v.

ERIC H. HOLDER JR., Attorney
General,
                          *Respondent.*

No. 08-70219

Agency No.
A022 209 179

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
November 18, 2011—San Francisco, California

Filed January 27, 2012

Before: M. Margaret McKeown and Milan D. Smith, Jr.,
Circuit Judges, and Rudi M. Brewster, District Judge.*

Opinion by Judge Brewster

---

*The Honorable Rudi M. Brewster, Senior United States District Judge
for the Southern District of California, sitting by designation.

**COUNSEL**

Kari E. Hong (argued), Law Offices of Kari E. Hong, Portland, Oregon; Kara L. Hartzler, Florence Immigrant and Refugee Rights Project, Florence, Arizona, for the petitioner-appellant.

Anna Nelson (argued), Kiley L. Kane, Office of Immigration Litigation, United States Department of Justice, Washington, D.C., for the respondent-appellee.

**OPINION**

BREWSTER, Senior District Judge:

Jacqueline Tyson, a native of Australia, appeals the Board of Immigration Appeals' ("BIA") order of removal as an alien convicted of a controlled substance offense.[1] Tyson argues that the BIA erred when it decided that she is not eligible to seek § 212(c) discretionary relief from removal pursuant to the former Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(c), which was repealed in 1996 as to aliens with certain criminal convictions. We agree with Tyson that the stipulated facts trial in this case is substantially equal to a guilty plea for the purpose of § 212(c) relief. We hold that applying the repeal of § 212(c) relief would produce an impermissible retroactive effect on Tyson, who was convicted pursuant to a stipulated facts agreement based on a reasonable expectation that it would not negatively affect her immigration status. *INS v. St. Cyr*, 533 U.S. 289, 319 (2001); *Landgraf v. USI Film Prods.*, 511 U.S. 244, 269-70 (1994). Because the BIA erred in its legal analysis of the effect of this

---

[1]The notice of removal was addressed to Jacqueline Tyson. After her divorce from Mr. Tyson in 1980, petitioner remarried in 1982 and changed her name to Ableman. We follow the lead of the record and briefs, and also refer to petitioner as Tyson.

stipulated facts trial, we reverse and remand with instructions to consider Tyson's § 212(c) application on the merits.

## I. Background

Tyson was born in Australia in 1952. She entered the United States in 1973. She married an American citizen and, in 1977, obtained lawful permanent resident status.

When Tyson's marriage failed in 1980, she traveled to Australia, Hong Kong, and Thailand. In Thailand, she had an unexpected medical condition that required surgery. To ease her pain and depression, Tyson turned to heroin. She returned to the United States with 64.5 grams of heroin and was arrested at the airport. The two-count indictment charged importation of a controlled substance in violation of 21 U.S.C. § 952, and possession of a controlled substance with intent to distribute in violation of 21 U.S.C. § 841(a)(1).

Tyson entered into a stipulation with the government. It stated that Tyson, "after having discussed the matter with counsel and having been satisfied with the advice received, hereby agrees to submit the question of her guilt or innocence of the counts in the above-entitled indictment to the Court on the basis of the following set of stipulated facts and testimony." The stipulation set out the constitutional rights that Tyson waived; the weight and purity of the heroin; an expert opinion that the heroin's street value was over $100,000; and that Tyson, who paid $350 for the heroin, intended to use it exclusively for herself. After hearing argument, the district court held that the facts established beyond a reasonable doubt that Tyson was guilty of importing heroin; however, because there was insufficient evidence that she intended to distribute the drug the court found Tyson not guilty on count two. The court imposed a term of three years probation.

At the time of Tyson's 1980 conviction, the INA excluded admission to the United States of any alien who had been con-

victed of "a violation of . . . any law or regulation relating to the illicit possession of or traffic in narcotic drugs or marihuana." 8 U.S.C. § 1182(a)(23) (1976). Section 212(c) of the INA further stated, however, that aliens who had been "lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily . . . and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General" despite the conviction. 8 U.S.C. § 1182(c) (1976) (repealed 1996).

Twenty-four years later, Tyson departed the United States, and then sought re-entry in 2005. The Department of Homeland Security ("DHS") denied the request based on her 1980 conviction. 8 U.S.C. § 1182(a)(2)(A)(i)(II). Tyson applied for a waiver of inadmissibility pursuant to former § 212(c). She relied upon *St. Cyr*, 533 U.S. at 294, 321-22, in which the Supreme Court held that § 212(c) relief remained available to an alien who had entered a plea bargain with the expectation that she would remain eligible for a waiver. DHS moved to pretermit her § 212(c) application. Citing *Armendariz-Montoya v. Sonchik*, 291 F.3d 1116, 1121-22 (9th Cir. 2002), DHS argued that Tyson had not entered a guilty plea but instead elected to have a bench trial, and therefore, she could not credibly claim the repeal had an impermissible retroactive effect.

The Immigration Judge ("IJ") held that *St. Cyr* "cannot be extended to [an] alien who pled not guilty and proceeded to trial." Consequently, the IJ held that Tyson was not eligible to seek a waiver under § 212(c). The BIA adopted the IJ's decision and affirmed. This timely petition for review followed.

## II.   Discussion

We have jurisdiction to review questions of law in final orders of removal. 8 U.S.C. § 1252(a)(2)(D). "We review de novo, and without *Chevron* deference to the BIA, whether a

change to an immigration law is impermissibly retroactive." *Camins v. Gonzales*, 500 F.3d 872, 880 (9th Cir. 2007) (citations omitted).

**[1]** Before 1996, the INA allowed a permanent resident alien who had been convicted of a certain type of crime, but who had at least seven years of residence, to apply for discretionary relief from deportation pursuant to § 212(c). *St. Cyr*, 533 U.S. at 294-95 (citing 8 U.S.C. § 1182(c)). In determining discretionary relief, the BIA considered a wide range of equitable factors, including the seriousness of the offense, evidence of rehabilitation or recidivism, and the impact of deportation on the family. *Id.* at 296 n.5. "If relief is granted, the deportation proceeding is terminated and the alien remains a permanent resident." *Id.* at 295. Historically, an extremely large class of aliens qualified for discretionary relief and "a substantial percentage of their applications for § 212(c) relief have been granted." *Id.* at 295-96 & n.5.

Over the years, Congress "reduced the size of the class of aliens eligible for such discretionary relief" by expanding the class of deportable aliens. *Id.* at 294-97 & nn.4 & 6 (for example, the Immigration Act of 1917 excluded aliens who had committed crimes "involving moral turpitude," while 1996 amendments "broadened substantially" the definition of an "aggravated felony").

**[2]** In 1996, Congress repealed § 212(c) for any alien with a drug conviction and many other categories of crimes. *Id.* at 292-93, 297 & n.7 (citing the Illegal Immigration Reform and Immigrant Responsibility Act of 1996); *Armendariz-Montoya*, 291 F.3d at 1118 & n.1 (citing the Antiterrorism and Effective Death Penalty Act, which "categorically negates § 212(c) relief for those aliens deportable for having committed a qualifying controlled substance offense or an aggravated felony.").

**[3]** In 2001, the Supreme Court held in *St. Cyr* that the repeal did not apply retroactively to "aliens who, in reliance

on the possibility of § 212(c) relief, pleaded guilty to aggravated felonies." 533 U.S. at 315. The Court applied the two-part test from the landmark decision of *Landgraf*. The first question is "whether Congress has expressly prescribed the statute's proper reach." *Landgraf*, 511 U.S. at 280. In *St. Cyr*, 533 U.S. at 316, the Supreme Court determined that Congress did not clearly prescribe the retroactive effect of the repeal of § 212(c). There is a presumption against retroactive legislation based on "[e]lementary considerations of fairness . . . that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted." *Id.* (quotation and citation omitted). The Court held that Congress had not unambiguously considered the retroactive impact on aliens who "were convicted pursuant to a plea agreement at a time when their plea would not have rendered them ineligible for § 212(c) relief." *Id.* at 320 & n.44. Therefore, we do not revisit this settled question.

We address the second question, whether the new statute "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf*, 511 U.S. at 280.

**[4]** Judging the statute "by 'familiar considerations of fair notice, reasonable reliance, and settled expectations,' " the Court in *St. Cyr* held that "elimination of any possibility of § 212(c) relief for people who entered into plea agreements with the expectation that they would be eligible for such relief clearly 'attaches a new disability, in respect to transactions or considerations already past.' " 533 U.S. at 321-22 (citations omitted). "In exchange for some perceived benefit, defendants waive several of their constitutional rights (including the right to a trial) and grant the government numerous 'tangible benefits, such as promptly imposed punishment without the expenditure of prosecutorial resources.' " *Id.* at 322 (citations omitted). "There can be little doubt that, as a general matter,

alien defendants considering whether to enter into a plea agreement are acutely aware of the immigration consequences of their convictions." *Id.* (citing *Magana-Pizano v. INS*, 200 F.3d 603, 612 (9th Cir. 1999) ("That an alien charged with a crime . . . would factor the immigration consequences of conviction in deciding whether to plead or proceed to trial is well-documented.")) (footnote and citation to treatise omitted). "Given the frequency with which § 212(c) relief was granted in the years leading up to [the 1996 amendments], preserving the possibility of such relief would have been one of the principal benefits sought by defendants deciding whether to accept a plea offer or instead proceed to trial." *Id.* at 323 (footnotes omitted). To remedy the "significant and manifest" injustice, the Court held that the repeal did not apply to such aliens. *Id.* at 323-26.

Initially, the Ninth Circuit generally limited the application of *St. Cyr* to aliens who had agreed to enter a guilty plea in reliance on the possibility of a waiver to removal. *Armendariz-Montoya*, 291 F.3d at 1121-22; *accord Saravia-Paguada v. Gonzales*, 488 F.3d 1122, 1131-34 (9th Cir. 2007); *Kelava v. Gonzales*, 434 F.3d 1120, 1122-25 (9th Cir. 2006). Here, the IJ held that these cases established a categorical rule. The IJ found that Tyson "was convicted pursuant to a guilty finding at bench trial." She "waived her right to jury trial; however, there is no evidence in the record that [Tyson] entered into a plea agreement. Under current Ninth Circuit law, *St. Cyr* cannot be extended to [an] alien who pled not guilty and proceeded to trial." The BIA affirmed without further analysis.

## A.   Trial by Stipulation

**[5]** We conclude the BIA erred in its conclusion that *St. Cyr* is restricted to plea bargains and that Tyson's stipulated facts trial rendered her ineligible for discretionary relief. "Although evidence of a guilty plea or other quid pro quo exchange that could reasonably have been made in reliance on

an old law is not the exclusive means of proving reliance, it is clearly sufficient." *Camins*, 500 F.3d at 884 (citations omitted); *Hernandez de Anderson v. Gonzales*, 497 F.3d 927, 940 (9th Cir. 2007); *see Garcia-Ramirez v. Gonzales*, 423 F.3d 935, 943-44 & n.1 (9th Cir. 2005) (Fisher, J., and D.W. Nelson, J., concurring). "Reasonable reliance may itself be based upon a quid pro quo, as in *St. Cyr* . . . or merely on assurances as to the current status of the law." *Chang v. United States*, 327 F.3d 911, 920 n.8 (9th Cir. 2003). Aliens claiming that the 1996 "repeal of relief from deportation is impermissibly retroactive as applied to them must demonstrate reasonable reliance" on the earlier version of the statute. *Hernandez de Anderson*, 497 F.3d at 939 (citing *Kelava*, 434 F.3d at 1124-25 & n.7; *Saravia-Paguada*, 488 F.3d at 1134).

**[6]** We conclude that the stipulated facts trial in Tyson's case is similar to a guilty plea in all important respects for purposes of applying *St. Cyr* to § 212(c). First, the defendant in a stipulated facts trial, like the defendant who pleads guilty, waives the constitutional right to a trial by a jury of her peers with an unanimous verdict. Tyson's stipulation with the government contained that specific waiver.

**[7]** Second, the defendant admits the truth of certain facts which relieves the government of the burden of proving those facts beyond a reasonable doubt. Here, Tyson admitted that she smuggled 64.5 grams of heroin into the United States. Her admission also waived her privilege against self-incrimination.

**[8]** Third, the defendant in a stipulated facts trial waives the constitutional right to confront the witnesses against her and the right to cross-examine witnesses. Here, Tyson could have questioned the expert witness's conclusion that the amount indicated an intent to distribute the heroin.

**[9]** Finally, like a guilty plea, an agreement to a stipulated facts trial waives the defendant's right to present evidence on

her own behalf. Here, Tyson waived her right to present a medical-necessity defense.

[10] In conclusion, we hold that the stipulated facts trial in this case entitles Tyson to invoke the *St. Cyr* line of cases in her immigration proceeding even though she did not enter a traditional guilty plea.

In an attempt to persuade us that a stipulated facts trial is the equivalent of a bench trial for purposes of § 212(c) relief, the BIA argues that Tyson "rolled the dice" by "elect[ing] to go to trial where full acquittal is a realistic possibility." The BIA contends that Tyson simply exchanged a jury of twelve for a judge as the finder of fact in an effort to avoid a conviction. Indeed, the BIA observes, the district court found Tyson not guilty of the distribution count.

We are not persuaded by this attempt to equate the procedure used in Tyson's case with a defendant who does not plead guilty but instead proceeds to a bench trial. The government often agrees to dismiss some of the counts in an indictment in exchange for a defendant's guilty plea to counts covered by the plea bargain.[2] This case is analogous. The indictment charged two offenses — importation and possession with intent to distribute. Tyson stipulated that she smuggled 64.5 grams of heroin into the country. That admission essentially guaranteed that she would not be acquitted on the importation count. Thus, Tyson did not retain the realistic

---

[2]A conviction based on a guilty plea could still be overturned for jurisdictional or constitutional problems, unless the defendant expressly waived the right to appeal. Many criminal defendants use stipulated facts trials to preserve a question for appeal about the legality of a search or the constitutionality of a statute. In those instances, if the defendants prevailed on appeal, they would also "avoid criminal liability altogether." In this case, Tyson admitted facts which guaranteed conviction of at least importation of heroin. There would be no opportunity to reverse that count on appeal unless she had preserved a jurisdictional or constitutional issue. The same is true for a resolution of a case by a plea of guilty.

possibility that she would be acquitted on the first count by choosing to proceed on stipulated facts trial. Nor was Tyson guaranteed an acquittal on the distribution count. Tyson risked a conviction on that count because the facts in the stipulation presented a close call. For example, the substantial market value of the heroin could be a convincing indication that Tyson intended to sell it for a significant profit over her minor investment.

More importantly, "while [Tyson] may have 'rolled the dice' in terms of guilt or innocence at trial, [she] did not do so with respect to immigration consequences in view of [her] reasonable expectation that there would be no adverse immigration consequences of going to trial." *Ponnapula v. Ashcroft*, 373 F.3d 480, 500 (3d Cir. 2004). Instead, Tyson "was (retroactively) deceived as to what was riding on the roll of the dice" because Congress amended the INA to eliminate § 212(c) discretionary relief for an alien convicted of a controlled substance offense. *Id.*

Next, the BIA contends that there is no evidence to demonstrate a quid pro quo between Tyson and the prosecution. This argument fails on the law and the facts. We have held that quid pro quo is not an essential requirement of the retroactivity doctrine. *Camins*, 500 F.3d at 884; *Hernandez de Anderson*, 497 F.3d at 940. In any event, the record establishes that the government did benefit from Tyson's agreement to a trial on stipulated facts. The government was virtually assured a conviction on the importation charge and it avoided the time and expense of selecting a jury, preparing witnesses, and participating in a trial.[3] These are tangible benefits to the government. *See St. Cyr*, 533 U.S. at 322.

---

[3]Although the written stipulation does not cover sentencing issues, the government apparently benefitted from the prompt imposition of its recommended sentence. *St. Cyr*, 533 U.S. at 322. Tyson states in her affidavit that her defense attorney informed her that if she accepted the government's offer, she would not receive a prison term and would be on probation for three years. We credit her testimony that the government agreed to recommend, or at least to not object to, a light sentence.

Third, the BIA complains that certain terms of the bargain were not reduced to writing. A plea agreement, or in this instance, the stipulated facts agreement, need not expressly preserve an alien's eligibility for § 212(c) relief for the 1996 amendments to be impermissibly retroactive. *Ponnapula*, 373 F.3d at 493, 497-98; *e.g.*, *Brown v. Poole*, 337 F.3d 1155, 1159 (9th Cir. 2003) ("terms of oral plea agreements are enforceable").

Our conclusion is supported by the agency's own regulation on the availability of § 212(c) relief despite a conviction before 1996. The regulation states that § 212(c) relief is available to "aliens who pleaded guilty or nolo contendere," but not with respect to "convictions entered after trial." 8 C.F.R. § 1212.3(h) (2005); *id.* (regulation applies to aliens who made a "plea agreement" before the effective date of the 1996 amendment). If a nolo contendere plea qualifies an alien for relief, then *a fortiori* a stipulated facts trial qualifies. Fed. R. Crim. P. 11 (same rights, procedures, and duties apply to a guilty plea as to a nolo contendere plea); Cal. Penal Code § 1016(3) (a no contest plea has the same legal effect as a plea of guilty). A defendant who enters a plea of nolo contendere stands mute on the question of guilt or innocence and does not offer any evidence. *E.g.*, *United States v. Mancinas-Flores*, 588 F.3d 677, 681-83 (9th Cir. 2009). The burden on the government is much greater than the one imposed by Tyson's stipulated facts trial where she provided the necessary factual basis.

## B.   Reliance, Settled Expectations, and Impaired Rights

Turning to the question of Tyson's reliance, the BIA argues it was per se unreasonable for her to rely on the continued availability of § 212(c) relief.

**[11]** We conclude that the record establishes objectively reasonable reliance. *Hernandez de Anderson*, 497 F.3d at 939. Tyson submitted an affidavit stating that her criminal defense

attorney informed her that any conviction would not automatically result in deportation. She believed that there would be no irreparable immigration consequences by agreeing to have her guilt determined based on stipulated facts. Had she known that a conviction pursuant to a stipulated facts trial would result in certain deportation, she would have fought to obtain a complete acquittal by presenting her medical-necessity defense to a jury.

Like the alien in *St. Cyr*, 533 U.S. at 314-15, Tyson's consent to a stipulated facts trial in 1980 created two consequences: (1) she became subject to deportation and (2) she became eligible for a discretionary waiver of that deportation under the prevailing interpretation of § 212(c). Congress changed the second consequence in 1996 by eliminating Tyson's eligibility for a waiver. Tyson benefits from the observation in *St. Cyr*, 533 U.S. at 322, that "[t]here can be little doubt that, as a general matter" alien defendants facing criminal charges "are acutely aware of the immigration consequences." *Accord Hernandez de Anderson*, 497 F.3d at 940-43 (petitioner who implicitly relied on her eligibility for relief showed plausible and adequate reliance); *Magana-Pizano*, 200 F.3d at 612. Even though there is no guarantee that the BIA would grant discretionary relief, the Supreme Court acknowledged that "[t]here is a clear difference . . . between facing possible deportation and facing certain deportation." *St. Cyr*, 533 U.S. at 325; *accord Camins*, 500 F.3d at 883. Based on the evidence before the BIA, it is objectively reasonable that the immigration consequences were an important part of Tyson's decision about how to handle the criminal case.[4]

---

[4]Though the issue does not arise in this case, notions of basic fairness and due process suggest that even aliens without actual knowledge of the law are entitled to rely on the law as it existed. Arguably, an alien does not need to prove reliance because each person impliedly relies on existing law — both its benefits and its consequences. *Olatunji v. Ashcroft*, 387 F.3d 383, 388-95 (4th Cir. 2004). We leave open the question of whether retroactive application of the repeal offends the Due Process Clause of the Constitution. *Id.* at 389 n.2.

Significantly, at the time she brought heroin into the United States, the INA held out a very real possibility that she would qualify for discretionary relief from removal. *St. Cyr*, 533 U.S. at 321-22 & n.5; *Hernandez de Anderson*, 497 F.3d at 936-37.

[12] Even if Tyson had been convicted on both counts of the indictment by a jury, she would have remained eligible to seek a § 212(c) waiver in 1980. As Tyson already possessed the right to apply for a waiver, there was no barrier for her to overcome when she negotiated the waiver of certain constitutional rights by agreeing to a stipulated facts procedure. Nonetheless, Tyson plainly meets the principles and language in the *Landgraf* decision. As that lead case frames the question, applying the 1996 amendment retroactively to Tyson's 1980 conviction "takes away or impairs vested rights acquired under existing laws" and "attaches a new disability, in respect to transactions or considerations already past." *Landgraf*, 511 U.S. at 269 & n.23 (noting alternative language, including a law is retroactive when it "changes the legal consequences of acts completed before its effective date" or gives "a quality or effect to acts or conduct which they did not have or did not contemplate when they were performed") (quotations and citations omitted); *see, e.g., Lopez-Castellanos v. Gonzales*, 437 F.3d 848, 852-54 (9th Cir. 2006) (applying *St. Cyr* and *Landgraf* to an alien who pleaded guilty in 1988 to a crime that was not then considered an "aggravated felony" that barred discretionary relief); *Chang*, 327 F.3d at 920 (*Landgraf* asks if the new law imposes negative consequences "without fair notice, or in a manner that undermines reasonable reliance or upsets settled expectations").

## Conclusion

[13] We conclude that, for purposes of applying *St. Cyr* and *Landgraf*, the repeal of § 212(c) imposes an impermissible retroactive effect on aliens like Tyson, who in reliance on the possibility of discretionary relief, agreed to a stipulated

facts trial. The record demonstrates that Tyson reasonably relied on the law that existed when she faced criminal proceedings in 1980; therefore, the repeal of § 212(c) may not be applied retroactively to her conviction. We reverse the BIA's decision and remand Tyson's case with instructions to consider the merits of her § 212(c) application.

**PETITION GRANTED.**