# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          v.

TIA LATRICE HARRELL, aka Tia
Latrice Marr,
          *Defendant-Appellant.*

No. 10-30176

D.C. No.
2:10-cr-00001-
RAJ-1

OPINION

Appeal from the United States District Court
for the Western District of Washington
Richard A. Jones, District Judge, Presiding

Submitted March 10, 2011*
Seattle, Washington

Filed March 17, 2011

Before: Raymond C. Fisher, Ronald M. Gould, and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Tallman

---

*The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

## COUNSEL

Jenny A. Durkan, United States Attorney, Western District of Washington, Vincent T. Lombardi II, Assistant United States Attorney, Seattle, Washington, for plaintiff-appellee United States of America.

Terrence Kellogg, Seattle, Washington, for defendant-appellant Tia Latrice Harrell.

## OPINION

TALLMAN, Circuit Judge:

Tia Latrice Harrell raises a question of first impression in our Circuit: whether the "relating to" parentheticals within 18 U.S.C. § 1028A(c) limit the statute's otherwise clear articulation of which offenses may serve as predicates for application of § 1028A(a).[1] We publish to make clear that the "relating

---

[1] Section 1028A(a)(1) provides that "[w]hoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years." Subsection (c) thereafter provides:

(c) Definition.—For purposes of this section, the term "felony violation enumerated in subsection (c)" means any offense that is a felony violation of—

to" parentheticals do not limit the statute's effect, but serve simply as descriptive aids.

## I

Harrell knew that she would never be approved to visit the Washington Corrections Center in Shelton, Washington. The center was trying to combat a growing problem with smuggled-in contraband, and Harrell had a lengthy criminal record and was under federal supervision at the time for bank fraud.[2] Her solution was simple: she assumed someone else's identity. In her written visitor's application, Harrell listed another individual's name, date of birth, and Social Security number, and, when she visited the facility, she presented a Washington state identification card in that same person's name.

Harrell's subterfuge did not last long, however. Corrections officials discovered that one of the facility's regular visitors was on active supervision—a fact not reflected in their records. By comparing photographs, they identified Harrell as that visitor, and, during Harrell's next visit, they confronted her about her subterfuge. Before she was arrested, Harrell admitted both her true identity and the fact that she had previously smuggled drugs into the facility.

---

\* \* \*

> (11) section 208, 811, 1107(b), 1128B(a), or 1632 of the Social Security Act (42 U.S.C. [§§ ] 408, 1011, 1307(b), 1320a-7b(a), and 1383a) (*relating to false statements relating to programs under the Act*).

§ 1028A(c)(11) (emphasis added).

[2] Notably, Harrell was convicted after she obtained numerous Washington state identification cards by using the Social Security numbers and dates of birth of individuals whose identities had been stolen. She then used these identifications to open bank accounts into which she deposited counterfeit checks, withdrawing the funds before the checks were discovered to be fraudulent.

On January 6, 2010, a grand jury returned a three-count indictment against Harrell, charging her with one count of Social Security number fraud, in violation of 18 U.S.C. § 408(a)(7)(B), one count of aggravated identity theft, in violation of 18 U.S.C. § 1028A, and one count of possession of ammunition as a convicted felon, in violation of 18 U.S.C. § 922(g). Harrell moved the district court to dismiss the § 1028A count for the same reasons she now raises on appeal. The district court denied her motion. On March 3, 2010, she pled guilty to the § 408(a)(7)(B) and § 1028A counts pursuant to the terms of a conditional plea agreement, reserving the right to appeal the district court's denial of her motion to dismiss the § 1028A count. In return, the Government dismissed the felon in possession charge. After being sentenced, Harrell timely filed her notice of appeal.

## II

Harrell claims that § 1028A does not apply to her because the application of § 1028A(c)(11) is limited by the parenthetical that follows its enumeration of specific predicate offenses. She argues that the district court erred in not dismissing that count because her conviction for violating § 408(a)(7)(B) was not related to any attempt to "appl[y] for or obtain[ ] benefits" under the Social Security Act. We do not agree.

The parenthetical is clearly a descriptive term, not a limiting principle—a conclusion compelled by the fact that the interpretation urged by Harrell is not supported by the plain language of the statute and would render some of the statute's provisions meaningless.[3] In so holding, we join with the First Circuit on this very point, *United States v. Persichilli*, 608

---

[3]Subsection (c)(11) is not the only subsection containing a "relating to" parenthetical; rather, each of the eleven subsections contains a similar "relating to" parenthetical that follows the enumeration of either specific statutory sections or entire chapters of the United States Code. *Cf.* § 1028A(c).

F.3d 34, 40-41 (1st Cir. 2010), and adhere to the guidance of our prior decision in *United States v. Galindo-Gallegos*, 244 F.3d 728, 734 (9th Cir. 2001) ("Therefore, the straightforward reading of the parenthetical in the aggravated felony statute, 'relating to alien smuggling,' is that it merely describes and does not limit subsection (ii) 'transporting' offenses that may be a predicate for the aggravated felony."), which concerned the import of identical "relating to" parenthetical language in 8 U.S.C. § 1101.

"As in any case of statutory construction, our analysis begins with 'the language of the statute.' And where the statutory language provides a clear answer, it ends there as well." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999) (citation omitted). To aid our inquiry, we rely on our established rules of statutory construction, which instruct us to consider not only the words used in a particular section but also the statute as a whole. *United States v. Cabaccang*, 332 F.3d 622, 627 (9th Cir. 2003) (en banc) ("[W]e must interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous." (alteration in original) (quoting *Boise Cascade Corp. v. EPA*, 942 F.2d 1427, 1432 (9th Cir. 1991) (internal quotation marks omitted))).

**[1]** Reviewing the language of subsection (c)(11) alone, we are hard-pressed to see how Congress might have intended the parenthetical to be accorded a limiting effect rather than a descriptive one. The phrase "relating to" does not itself imply exclusivity; rather, it plainly reflects a descriptive character. *Persichilli*, 608 F.3d at 40 ("But the [§ 1028A(c)(11)] parenthetical is not phrased as a limitation: it merely provides a short-hand description of what several of the cited sections primarily cover."); *id.* at 41 ("A mere summary description of a cross-reference, as in paragraph 11, . . . cannot alter the unambiguous language that encompasses violations of section

208 without qualification."); *see also Galindo-Gallegos*, 244 F.3d at 734.

In addition, as the Government contends in its briefs, to accord the parenthetical a limiting effect would render Congress' inclusion of 42 U.S.C. § 1307(b) a superfluous nullity as that section does not "relat[e] to false statements *relating to programs under the Act*"—much less relate to "applying for or obtaining [Social Security] benefits." *Cf.* § 1028A(c)(11). Instead, § 1307(b) criminalizes the making of false statements "with the intent to elicit information as to the social security account number, date of birth, employment, wages, or benefits of any individual" *absent any regard for whether those statements relate to a Social Security program.*[4] Because we must "mak[e] every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous," this fact alone would compel us to affirm the district court. *Cabaccang*, 332 F.3d at 627; *see Galindo-Gallegos*, 244 F.3d at 733 ("We reject Galindo-Gallegos['] reading [of the "relating to"

---

[4]In its entirety, § 1307(b) provides:

(b) Whoever, with the intent to elicit information as to the social security account number, date of birth, employment, wages, or benefits of any individual (1) falsely represents to the Commissioner of Social Security or the Secretary that he is such individual, or the wife, husband, widow, widower, divorced wife, divorced husband, surviving divorced wife, surviving divorced husband, surviving divorced mother, surviving divorced father, child, or parent of such individual, or the duly authorized agent of such individual, or of the wife, husband, widow, widower, divorced wife, divorced husband, surviving divorced wife, surviving divorced husband, surviving divorced mother, surviving divorced father, child, or parent of such individual, or (2) falsely represents to any person that he is an employee or agent of the United States, shall be deemed guilty of a felony, and, upon conviction thereof, shall be punished by a fine not exceeding $10,000 for each occurrence of a violation, or by imprisonment not exceeding 5 years, or both.

clause], because it does not make sense of all the words of the statute.").

**[2]** We do not have to rely simply on that point, however, because there exists even more evidence refuting Harrell's claim. First, in § 1028A(c)(4), Congress provides a clear example of the language it uses when *it intends a limiting clause.* In contrast to the "relating to" parentheticals used in every one of the eleven enumerated subsections in this section, Congress provided:

> (4) any provision contained in this chapter (relating to fraud and false statements), *other than this section or section 1028(a)(7)*;

§ 1028A(c)(4) (emphasis added). As explained in *Galindo-Gallegos*, Congress' use of clear *and distinct* language when it intends a limiting effect underscores the descriptive character of the "relating to" parenthetical. 244 F.3d at 733-34.

> Moreover, in other subsections, Congress used a perfectly clear approach to articulate a limiting rather than descriptive parenthetical. For example, in subsection J, there is a descriptive parenthetical using the same "relating to" form as the subsection N parenthetical at issue in this case, followed by a limiting parenthetical, "if it is a second or subsequent offense." Subsection J can only be read as using the "relating to" language as descriptive and the "if" language as limiting, so there is no reason to doubt that Congress meant the "relating to" language in N to be descriptive as well. The function of the descriptive language appears to be to make reading the statute easier, so that one does not have to look up each citation to see what it is about, and to protect against scrivener's error in getting the statute from the drafting desk to the United States Code.

*Id.* at 734.

**[3]** Second, as has been described, Congress' use of "relating to" parentheticals is widely understood to have a descriptive import. *E.g.*, *Persichilli*, 608 F.3d at 40-41; *Galindo-Gallegos*, 244 F.3d at 733-34; *United States v. Monjaras-Castaneda*, 190 F.3d 326, 330 (5th Cir. 1999) ("A parenthetical is, after all, a parenthetical, and it cannot be used to overcome the operative terms of the statute." (quoting *Cabell Huntington Hosp., Inc. v. Shalala*, 101 F.3d 984, 990 (4th Cir. 1996)) (internal quotation marks omitted)); *United States v. Kassouf*, 144 F.3d 952, 959-60 (6th Cir. 1998) (finding "relating to" parenthetical in 26 U.S.C. § 6531(6) descriptive); *United States v. Garner*, 837 F.2d 1404, 1419 (7th Cir. 1987) ("[W]hen read in context, the parenthetical 'relating to bribery' does not limit the incorporation of [18 U.S.C. § ] 201 [into § 1961(1)(B)], but describes it. . . . As another court has said, the parentheticals are only 'visual aids,' designed to guide the reader through what would otherwise be a litany of numbers." (internal quotation marks omitted)); *United States v. Herring*, 602 F.2d 1220, 1223 (5th Cir. 1979) (holding that the "relating to" parenthetical in 18 U.S.C. § 1961 was "merely to aid identification of [18 U.S.C.] § 2314 rather than to limit" its application). *But see Evangelista v. Ashcroft*, 359 F.3d 145, 152-53 (2d Cir. 2004). Harrell does not convince us that we should treat the parentheticals in § 1028A(c) any differently.

**[4]** Because we conclude that the plain text of § 1028A(c) demonstrates that the "relating to" parentheticals serve as descriptive aids intended by Congress "to make reading the statute easier, so that one does not have to look up each citation to see what it is about, and to protect against scrivener's error in getting the statute from the drafting desk to the United States Code," *Galindo-Gallegos*, 244 F.3d at 734, that ends our inquiry. We have no cause to trudge through the deep mud of legislative history. *See United States v. Gonzales*, 520 U.S. 1, 6 (1997) ("Given the straightforward statutory com-

mand, there is no reason to resort to legislative history. Indeed, far from clarifying the statute, the legislative history only muddies the waters." (citation omitted)). Neither do we find the rule of lenity to be of any aid to Harrell's claim. *See United States v. Shabani*, 513 U.S. 10, 17 (1994) ("The rule of lenity, however, applies only when, after consulting traditional canons of statutory construction, we are left with an ambiguous statute."); *see also Callanan v. United States*, 364 U.S. 587, 596 (1961).

**AFFIRMED.**