**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

LKAV, JUVENILE MALE,
*Defendant-Appellant.*

No. 12-10483

D.C. No.
4:11-cr-02966-JGZ-
CRP-1

OPINION

Appeal from the United States District Court
for the District of Arizona
Jennifer G. Zipps, District Judge, Presiding

Argued and Submitted
February 15, 2013—San Francisco, California

Filed April 2, 2013

Before: Jerome Farris and N. Randy Smith, Circuit Judges,
and Timothy M. Burgess, District Judge.[*]

Opinion by Judge N.R. Smith

---

[*] The Honorable Timothy M. Burgess, District Judge for the U.S. District Court for the District of Alaska, sitting by designation.

## SUMMARY[**]

---

### Criminal Law

Reversing an order committing a juvenile for a study of his competency to stand trial, the panel held that the district court erred by committing the juvenile under 18 U.S.C. § 4241(d), rather than proceeding pursuant to Federal Juvenile Delinquency Act.

---

### COUNSEL

J. Ryan Moore (argued), D. Erendira Castillo-Reina, and Brian I. Rademacher, Assistant Federal Public Defenders, Tucson, Arizona, for Juvenile-Appellant.

Christina Cabanillas (argued) and Ann L. DeMarais, Assistant United States Attorneys, Tucson, Arizona, for Plaintiff-Appellee.

---

### OPINION

N.R. SMITH, Circuit Judge:

When the United States charges a juvenile with an act of juvenile delinquency under the Federal Juvenile Delinquency Act (the "FJDA"), 18 U.S.C. §§ 5031–42, the district court

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

must follow 18 U.S.C. § 5037(e) if it commits the juvenile for a study of the juvenile's competency to stand trial. Because the district court in this case instead committed LKAV under 18 U.S.C. § 4241(d), we reverse.

## FACTS AND PROCEDURAL HISTORY

Tribal authorities of the Tohono O'odham nation charged LKAV (age 17) with murder in May 2009.[1] After being charged, he remained in tribal custody from 2009 until 2011. While in custody, he was found incompetent, but was not sent to a treatment facility for restoration to competency. In late 2011, the United States filed its own charge against LKAV and obtained a writ of habeas corpus to remove him from tribal custody. To obtain federal jurisdiction over LKAV, the United States filed a "Certification to Proceed Against Juvenile Pursuant to Title 18, United States Code, Section 5032, as Amended." The United States certified that LKAV's charge warranted federal jurisdiction and signaled the United States' intent to proceed against LKAV as an alleged juvenile delinquent under the FJDA.

In November 2011, the United States moved to commit LKAV, pursuant to 18 U.S.C. § 4241, to an adult medical facility for psychiatric evaluation. LKAV did not oppose the United States' request to proceed under § 4241, but asked for a local evaluation. LKAV also requested a competency hearing take place *before* he was committed under § 4241. Deferring to these requests, the government withdrew its motion to proceed under § 4241, and the magistrate judge did not decide at that time whether § 4241 governed LKAV's commitment. The magistrate judge granted LKAV's request

---

[1] LKAV turned twenty-one in August 2012.

for a preliminary examination to take place in Phoenix, Arizona. After extensive neuropsychological examination, the examining psychologist deemed LKAV incompetent to stand trial.

LKAV then filed a motion to proceed with commitment under the FJDA, § 5037(e). At a status conference before the magistrate judge in July 2012, the United States stipulated to LKAV's incompetency. However, the United States maintained its position that LKAV should be committed to an adult facility under § 4241(d). The United States filed a motion to that effect the next day.

The magistrate judge granted the United States' motion to proceed under § 4241 and denied LKAV's motion to proceed under § 5037(e). The magistrate judge's Order of Commitment committed LKAV "to the custody of the Attorney General to be hospitalized in a suitable facility for a reasonable period of time, **NOT TO EXCEED FOUR (4) MONTHS**, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the trial to proceed." In its own written order (the "Order"), the district court affirmed the Order of Commitment. LKAV filed a timely, interlocutory appeal of the Order, challenging his § 4241(d) commitment.

After the appeal was filed, the United States transported LKAV to FMC-Butner, an adult medical facility, pursuant to the Order. FMC-Butner completed its competency evaluation of LKAV in January 2013. FMC-Butner's report concluded that LKAV was incompetent to stand trial. However, the report further concluded that, "with an additional period of hospitalization and treatment," LKAV could be restored to competency. The report also suggested a 120-day extension

of the previous commitment deadline (set to expire in January 2013) for such hospitalization and treatment. The United States filed a motion for the requested extension, based on the report. On LKAV's motion, the district court decided to hear the motion for extension of time (rather than refer it to the magistrate judge). On February 11, 2013, the district court granted the United States' motion and extended LKAV's commitment for up to an additional 120 days.

## JURISDICTION

We ordinarily hear appeals "only from a district court's final decision." *United States v. Loughner*, 672 F.3d 731, 742 (9th Cir. 2012) (citing 28 U.S.C. § 1291). However, under the collateral order doctrine, we review "a district court's preliminary or interim decision when it '(1) conclusively determines the disputed question, (2) resolves an important issue completely separate from the merits of the action, and (3) is effectively unreviewable on appeal from a final judgment.'" *Id.* (quoting *Sell v. United States*, 539 U.S. 166, 176 (2003)).

Here, LKAV's challenge to the Order is appealable under the collateral order doctrine, and no party challenges our jurisdiction. The Order conclusively determines LKAV's rights with respect to his pre-adjudication commitment. Further, the issue before us—whether § 4241(d) applies to LKAV—is completely separate from the ultimate issue of LKAV's delinquency. Finally, delay would render the Order effectively unreviewable. LKAV seeks only release from commitment at FMC-Butner. LKAV's release from FMC-Butner would obviate the need for our court to issue an order

and could render LKAV's appeal moot.**[2]**  *See id.* at 743 ("Finally, the issue is effectively unreviewable because [b]y the time of trial [Loughner] will have undergone forced medication—the very harm that he seeks to avoid." (alterations in original) (internal quotation marks omitted)).

## STANDARD OF REVIEW

We review the district court's interpretation of §§ 4241(d) and 5037(e) de novo.  *See United States v. Juvenile Male*, 670 F.3d 999, 1007 (9th Cir. 2012) ("We review a district court's construction or interpretation of a statute de novo.").

## DISCUSSION

"As in any case of statutory construction, our analysis begins with the language of the statute."  *United States v. Harrell*, 637 F.3d 1008, 1010 (9th Cir. 2011) (internal quotation marks omitted).  "To aid our inquiry, we rely on our established rules of statutory construction . . . ."  *Id.*  We also look to similar provisions within the statute as a whole and the language of related or similar statutes to aid in interpretation.  *See Jonah R. v. Carmona*, 446 F.3d 1000, 1006–07, 1011 (9th Cir. 2006).  "[S]tatutory interpretations which would produce absurd results are to be avoided."  *Arizona St. Bd. for Charter Schs. v. U.S. Dep't of Educ.*, 464 F.3d 1003, 1008 (9th Cir. 2006) (internal quotation marks omitted).  If a statute is ambiguous, we may "consult the legislative history, to the extent that it is of value, to aid in

---

**[2]** Indeed, we ordered the parties to brief the mootness issue.  However, the government concedes that this appeal is not moot so long as LKAV remains committed at FMC-Butner.  Thus, we need not reach the mootness issue.

our interpretation." *Merkel v. Comm'r*, 192 F.3d 844, 848 (9th Cir. 1999). Finally, in some cases, a statute's "purpose" may shed light on the interpretive question. *See Jonah R.*, 446 F.3d at 1005, 1010–11.

We conclude that each of the foregoing "tools" of statutory interpretation indicate that the district court should have applied § 5037(e), rather than § 4241(d). The plain language of § 5037(e) makes clear that it applies to commitment and study of alleged juvenile delinquents like LKAV. Other textual "evidence" supports this conclusion as well. Our interpretation would not lead to an absurd or irrational result. Finally, even assuming that the statutory language is ambiguous, commitment under § 5037(e) (rather than § 4241(d)) is consistent with the purpose of the FJDA, as evidenced by the statute's legislative history.

### 1. Plain Language

Words in statutes usually carry "their plain, natural, ordinary and commonly understood meanings." *United States v. Romo-Romo*, 246 F.3d 1272, 1275 (9th Cir. 2001). In addition, courts "try to avoid, where possible, an interpretation of a statute that renders any part of it superfluous and does not give effect to all of the words used by Congress." *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 681 (9th Cir. 2005) (internal quotation marks omitted).

The United States acknowledges that it filed a certification to proceed against LKAV as an alleged juvenile delinquent pursuant to § 5032, thereby invoking the FJDA. Indeed, the United States conceded at oral argument that § 5037(e) applies to alleged juvenile delinquents. However, the United States argues that § 5037(e) does not mention

competency and, thus, cannot "supplant the mandatory competency evaluation and commitment procedure for all defendants set forth in § 4241." This argument overlooks the plain language of § 5037(e).

Section 5037(e) provides:

> If the court desires more detailed information concerning an alleged or adjudicated delinquent, it may commit him, after notice and hearing at which the juvenile is represented by counsel, to the custody of the Attorney General for observation and study by an appropriate agency. Such observation and study shall be conducted on an outpatient basis, unless the court determines that inpatient observation and study are necessary to obtain the desired information. In the case of an alleged juvenile delinquent, inpatient study may be ordered only with the consent of the juvenile and his attorney. The agency shall make a complete study of the alleged or adjudicated delinquent to ascertain his personal traits, his capabilities, his background, any previous delinquency or criminal experience, any mental or physical defect, and any other relevant factors. The Attorney General shall submit to the court and the attorneys for the juvenile and the Government the results of the study within thirty days after the commitment of the juvenile, unless the court grants additional time.

As is evident by its plain language, § 5037(e) applies in cases against alleged juvenile delinquents like LKAV. In such cases, the court may order commitment to the Attorney General for observation or study, if the court "desires more detailed information concerning" an alleged juvenile delinquent. 18 U.S.C. § 5037(e). One of the subjects of study specifically stated in the statute is "any mental or physical defect" of the alleged juvenile delinquent. While § 5037(e) does not mention competency, it does provide certain restrictions on the court's ability to order commitment of alleged juvenile delinquents. *Id.*

Section 4241(d) sets forth a different commitment scheme. That section provides for a mandatory commitment of a defendant, who has been deemed incompetent, for study of the defendant's potential for restorability to competence. 28 U.S.C. § 4241(d). While the United States acknowledges that § 4241 does not use the word "juvenile," it argues that § 4241's text "'unambiguously describes' the competency evaluating and commitment procedure applicable to [all] defendants." However, this argument overlooks the fact that the government charged LKAV with juvenile delinquency under the FJDA. As such, he is an "alleged juvenile delinquent" as that term is used in § 5037(e). Because § 5037(e) expressly provides for commitment, study, and observation of alleged juvenile delinquents, it controls over conflicting provisions of § 4241(d), which is applicable to federal criminal defendants generally. *Cf. United States v. Pete*, 525 F.3d 844, 848 (9th Cir. 2008) (noting that the FJDA's speedy trial provision, not the adult analog, applied during defendant's detention as an "alleged juvenile delinquent").

The United States cites our decision in *Jonah R.* to support its argument that § 4241(d) controls. The United States argues that *Jonah R.* mandates that the term "defendant" apply to LKAV, even though LKAV is a juvenile. We disagree. In *Jonah R.*, we held that 18 U.S.C. § 3585(b), a statute applicable to federal criminal defendants in general, also applied to juveniles. 446 F.3d at 1011. Under § 3585(b), "[a] defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences . . . ." 18 U.S.C. § 3585. Although the FJDA did not "expressly incorporate § 3585," the Bureau of Prisons ("BOP") had consistently applied it to juveniles for a period of time. *Jonah R.*, 446 F.3d at 1002. The court based its conclusion that § 3585 applies to juveniles on the text, legislative history, and purpose of the FJDA, § 3585, and similar statutes. *Id.* at 1006–11. Specifically, the court reasoned that the elimination of an express exception from § 3585's predecessor, § 3568, had made the subsequent statute more generally applicable. *Id.* at 1007. Congress's changes to the various, relevant statutes signaled Congress's expectation that "juveniles would receive credit for pre-sentence custody as a matter of course." *Id.* at 1008.

The United States makes too much of *Jonah R.* While the court concluded that the term "defendant" could be applied to a juvenile, it did not hold that the term *always* applies to juveniles. A close reading of *Jonah R.* reveals that the court based its decision on the unique history of § 3585 and the other relevant statutes. The textual argument, as well as the FJDA purpose argument, were only corollary to the court's structural/legislative history rationale. We decline the United States' invitation to stretch *Jonah R.* to compel application of

the term "defendant" to LKAV under § 4241(d), notwithstanding contrary provisions in the FJDA.[3]

In addition, the United States cannot rely on § 5037(e)'s heading—"Disposition"—in support of its textual argument. A "heading cannot substitute for the operative text of the statute." *See Florida Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 47 (2008). While the bulk of § 5037(e) is dedicated to the disposition of an adjudicated juvenile delinquent, § 5037(e), by its plain language, also applies to *alleged* juvenile delinquents. 18 U.S.C. § 5037(e). This application is not reflected in the heading. *See Piccadilly*, 554 U.S. at 47. ("[T]he title of a statute . . . cannot limit the plain meaning of the text." (alteration in original) (internal quotation marks omitted)).

The United States makes only one, vague attempt to account for the term "alleged juvenile delinquent" in § 5037(e). The United States points to *United States v. Juvenile Male*, 492 F.3d 1046 (9th Cir. 2007) (a juvenile transfer case) and suggests that it demonstrates a proper use of the § 5037(e) commitment proceedings. The United States argues that § 5037(e) commitment would be appropriate in cases like *Juvenile Male*, because a judge might sometimes need additional information before deciding the question of transferability of an alleged juvenile delinquent. Yet, the United States fails to make any logical distinction between commitment for study to obtain more information on the transferability question and commitment for study on the question of competency. Both are situations where the judge

---

[3] Though not part of our reasoning, there is no indication in *Jonah R.* that the custody credit provision in § 3585 conflicted with any provision of the FJDA.

may "desire[ ] more detailed information concerning an alleged" juvenile delinquent.  *See* 18 U.S.C. § 5037(e). While § 5037(e) is admittedly less comprehensive than § 4241(d) on the subject of competency, it covers the same subject matter—commitment.    Accordingly, the plain language of § 5037(e) shows that it applies to LKAV's commitment, rather than § 4241(d).

### 2.  Other Textual Support

The conclusion that LKAV's commitment falls under § 5037(e), not § 4241(d), finds support in the other provisions of the FJDA and the adult commitment statutes.  To proceed against LKAV in federal court, § 5032 required the United States to file a certification and demonstrate the basis for federal jurisdiction.  *See* 18 U.S.C. § 5032; *United States v. Juvenile Male*, 595 F.3d 885, 891 (9th Cir. 2010).    The United States acknowledged this requirement and filed the necessary certification.  Like § 5037(e), § 5032 uses the term "alleged juvenile delinquent."  The United States does not explain why it would be required to follow § 5032 to obtain jurisdiction over LKAV, but not follow procedures for his commitment under identical language in § 5037(e).[4]

Further, in numerous places, the FJDA specifically references criminal statutes of general applicability. *See, e.g.*, 18 U.S.C. § 5032 (referencing adult criminal statutes in the FJDA jurisdiction provision); *id*. § 5037 (incorporating certain adult sentencing provisions).    Under the well-

---

[4] The United States employs a similar argument—pointing out that LKAV did not initially object to proceeding under § 4241(d).  Given the plain language of § 5037(e), proceeding under § 4241(d) was error, regardless of whether LKAV initially failed to point out the error.

established expressio unius canon, Congress could have made express reference to § 4241(d) in § 5037(e) had it intended the adult provision to apply.

The United States makes the reverse argument. It argues that § 4241(d) and the surrounding provisions contain no exception for juvenile offenders. In essence, nothing in § 4241(d), and related provisions, indicates that it does *not* apply to juveniles. But this argument overlooks our cases where we have observed that the FJDA "governs the detention and disposition of juveniles charged with delinquency." *Juvenile Male*, 670 F.3d at 1004 (internal quotation marks omitted). While the United States is technically correct that nothing in § 4241(d) says that it *does not* apply to juveniles, nothing in the statute says that it *does* apply to juveniles. By contrast, § 5037(e) by its clear terms applies to "alleged juvenile delinquents" like LKAV.

The United States cites two out-of-circuit cases to support its argument that § 4241(d) applies to LKAV: *United States v. S.A.*, 129 F.3d 995, 999 (8th Cir. 1997), and *United States v. Robinson*, 404 F.3d 850, 856–58 (4th Cir. 2005). The United States' reliance on these cases is misplaced. In *S.A.*, the Eighth Circuit applied § 4246—which governs permanent, civil commitment of adults—to juveniles. 129 F.3d at 998–99. However, *S.A.* is inapposite for similar reasons as *Jonah R.* The court references the plain meaning rule, *id.* at 998, but then focuses on the "policy considerations that form the foundation of" the adult commitment statute.

*Id.* at 999. This case does not implicate the same policy considerations.**[5]**

Similarly, the relationship between § 4241(d) and § 5037(e) distinguishes this case from *S.A.* Again, this is not a case where courts are using generally applicable statutes to fill in gaps in the FJDA. Section 5037(e) already squarely addresses pre-adjudication commitment for study and observation.

*Robinson* is inapplicable to this question, too. While the *Robinson* court referenced § 4241(d) in passing in a juvenile case, 404 F.3d at 856, commitment under § 4241(d) was not at issue. Rather, the juvenile challenged the district court's competency determination. *Id. Robinson* does not implicate the conflict between § 4241(d) and § 5037(e), and thus provides no support for the government's argument.

### 3.  Absurdity

We reject the United States' various arguments that our interpretation of §§ 4241(d) and 5037(e) would lead to an absurd result. We must avoid an interpretation that "would produce absurd results." *Arizona St. Bd.*, 464 F.3d at 1008. However, "[w]hen a natural reading of the statutes leads to a rational, common-sense result, an alteration of meaning is not only unnecessary, but also extrajudicial." *Id.* In other words,

---

**[5]** At oral argument, LKAV briefly implied that one reason that the question of which statute applies is so important is that the United States' efforts to restore LKAV to competency may fail. In that case, the United States may need to seek permanent civil commitment under § 4246. Whether § 4246 would be an appropriate provision to control in LKAV's case is not before us and we do not decide that issue. Accordingly, we express no opinion on whether § 4246 would apply to FJDA cases.

"a decision to [rearrange] or rewrite [a] statute falls within the legislative, not the judicial, prerogative." *Xi v. INS*, 298 F.3d 832, 839 (9th Cir. 2002).

Most of the United States' absurdity arguments focus on the peculiar facts of this case and the practical difficulty of keeping LKAV in a different facility than FMC-Butner. For example, the United States points out that LKAV is no longer a juvenile, because he has turned twenty-one. While LKAV no longer meets the statutory definition of a juvenile, that does not mean that he is no longer subject to the FJDA. It is well-settled that jurisdiction under the FJDA is determined at the time of the information. *See United States v. Doe*, 631 F.2d 110, 112–13 (9th Cir. 1980). Accordingly, LKAV is still an "alleged juvenile delinquent" under § 5037(e).[6] While treating LKAV as a juvenile might create some housing issues, because he cannot be housed with other juveniles, such difficulty (necessarily temporary under the statute) does not lead to absurdity. In fact, the BOP program statement provided in the record states that a juvenile "may remain in a contract juvenile facility for continuity of program participation" after the juvenile's twenty-first birthday.

The United States also argues that it would be difficult and impractical to require the United States "to provide 24-

---

[6] Of course, the United States could have moved to transfer LKAV to an adult proceeding under § 5032, in which case subsequent commitment under § 4241(d) would be appropriate. Courts look to a number of attributes of the alleged juvenile delinquent to determine whether transfer would be "in the interest of justice." *See* 18 U.S.C. § 5032; *Juvenile Male*, 492 F.3d at 1048. The United States does not explain why it failed to seek transfer, if LKAV's particular needs warranted treating him as an adult anyway.

hour security in a private medical facility" given LKAV's circumstances. Yet, § 5037(e) clearly calls for a thirty-day, in-patient commitment in some cases. It does not strain reason to believe that some alleged or adjudicated juvenile delinquents are charged with dangerous crimes and must be kept in a secure facility, apart from other juveniles. *See* 18 U.S.C. § 5032. Even if this is more difficult in LKAV's case, it is beyond our purview to relieve the United States of any incidental inconvenience arising from LKAV's unique treatment needs. Given § 5037(e)'s clear import, the idea that the United States could make arrangements for LKAV's particular needs is not absurd.

The United States argues that our interpretation will lead to uncertain application of § 5037(e). Again, the United States fails to explain *why* the government would be unable to establish a set of procedures for commitment under § 5037(e). Just like § 4241(d), § 5037(e) provides for commitment to the custody of the Attorney General.[7] Section 5037(e) simply modifies certain other commitment details required in the case of alleged or adjudicated juveniles. Indeed, we expect that the United States' § 4241(d) procedures will continue to serve as a guide to how it might carry out § 5037(e) commitment. This is permissible, so long as the United States observes § 5037(e)'s enumerated limits on the juvenile's commitment.

---

[7] The United States (and the district court) make much of the fact that LKAV has failed to suggest a suitable facility to meet LKAV's treatment needs. However, they overlook the fact that the Order left little room for LKAV to suggest an alternate facility. Had the United States truly sought greater input from LKAV, it could have proceeded under § 5037(e). And, in any event, the ultimate responsibility to make suitable arrangements—whether under § 4241 or § 5037(e)—remains with the Attorney General.

Finally, the United States argues that § 5037(e) cannot apply to competency determinations, because it requires consent for inpatient study and imposes a thirty-day commitment time limit that may be too short to determine competency. We disagree. The juvenile's consent to inpatient study would be no barrier to commitment in cases like this one, because both parties have a vested interest in a swift and accurate competency determination. Further, § 5037(e) specifically contemplates court-sanctioned exceptions to the thirty-day commitment rule where needed. Accordingly, simply insisting that the United States comply with § 5037(e)'s commitment requirements does not lead to an irrational or absurd result.

### 4.  Legislative History and Purpose

LKAV does not point to any legislative history that would aid in the interpretation of § 5037(e) specifically. However, LKAV argues that our case law generally requires juveniles to be treated differently from adults. Our cases make clear that the FJDA's purpose is to provide special protections for juveniles, over and above those available to adults. "First enacted in 1938, the FJDA was intended to provide for the care and treatment of juvenile delinquents in recognition of significant differences between juvenile delinquents and adult offenders." *Juvenile Male*, 670 F.3d at 1004 (internal quotation marks and citation omitted). In other words:

> Under the [FJDA's] provisions, a juvenile is accorded preferential and protective handling not available to adults accused of committing crimes. Special obligations not applicable in adult criminal proceedings are imposed upon the arresting officer, § 5033, the magistrate,

> § 5034, the Attorney General, §§ 5032, 5035,
> 5039, the court, §§ 5032, 5036, 5037, 5038,
> and the U.S. Parole Commission, § 5041.

*United States v. Frasquillo-Zomosa*, 626 F.2d 99, 101 (9th Cir. 1980). In sum, "the purpose of the FJDA is to enhance the juvenile system by removing juveniles from the ordinary criminal justice system and by providing a separate system of treatment for them." *Juvenile Male*, 670 F.3d at 1004 (internal quotation marks omitted).

The FJDA's purpose sheds little light on how we should construe "alleged juvenile delinquent" and the other specific terms of § 5037(e). However, the legislative purpose serves the limited function of rebutting the United States' argument that our plain meaning interpretation is absurd, because it requires numerous accommodations for LKAV due to his juvenile status. The strong "purpose" language in our cases makes clear that the FJDA was meant to accord special status to juveniles. Accordingly, we reject the United States' argument that § 5037(e) cannot apply, because it potentially requires different (and perhaps more taxing) procedures than those set forth in § 4241(d).[8]

---

[8] The United States argues that, even if the district court erred, there was no prejudice because evaluation and treatment at FMC-Butner would still be appropriate. There is authority for a harmless error analysis for violations of the FJDA. *See, e.g.*, *United States v. Juvenile Male*, 336 F.3d 1107, 1111 (9th Cir. 2003), *overruled on other grounds by United States v. Doe*, 366 F.3d 1069 (9th Cir. 2004). However, we conclude that LKAV's ongoing commitment in violation of § 5037(e) prejudices him. LKAV has been at FMC-Butner far past the thirty days normally prescribed under § 5037(e). Commitment at FMC-Butner might be the most effective way to study and treat LKAV, even under § 5037(e). But, proceeding under § 4241(d) took away any flexibility that the district

## CONCLUSION

The district court erred by applying § 4241(d) to LKAV's commitment, rather than § 5037(e).  Accordingly, we reverse the district court, vacate the Order, and remand for further proceedings.[9]

**REVERSED and REMANDED.**

---

court may have had to vary LKAV's commitment term or other commitment details.  The district court's decision also took away any bargaining power that LKAV might otherwise have brought to bear on the conditions of his commitment.

[9] Because we reverse the district court on statutory interpretation grounds, we decline to reach LKAV's due process claim.