**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| ILAI KANUTU KOONWAIYOU, *Plaintiff-Appellant,* | No. 22-35233 |
| v. | D.C. No. 3:21-cv-05474-DGE |
| ANTONY J. BLINKEN, Secretary of State; UNITED STATES DEPARTMENT OF STATE, *Defendants-Appellees.* | OPINION |

Appeal from the United States District Court
for the Western District of Washington
David G. Estudillo, District Judge, Presiding

Argued and Submitted December 6, 2022
San Francisco, California

Filed June 7, 2023

Before: Jacqueline H. Nguyen and Lucy H. Koh, Circuit
Judges, and Joseph F. Bataillon, District Judge[*]

Opinion by Judge Koh

---

[*] The Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska, sitting by designation.

## SUMMARY[**]

### Immigration

The panel reversed the district court's grant of the Government's motion to dismiss in a case in which Ilai Kanutu Koonwaiyou sought a declaration that his mother's status as a non-citizen national—which she attained after Koonwaiyou's birth—qualified him to be a non-citizen national of the United States, and remanded.

In 1986, Congress amended the Immigration and Nationality Act of 1952 ("INA") to make individuals born to only one non-citizen national parent outside the United States and American Samoa eligible to become "nationals, but not citizens, of the United States at birth." 8 U.S.C. § 1408. Prior to 1986, such status extended only to (1) those born in American Samoa, (2) those born outside the United States or American Samoa with two non-citizen national parents, and (3) those found in American Samoa under the age of five whose parents are unknown.

The panel explained that Congress has extended citizenship to individuals born in every United States territory, except American Samoa, meaning that those with ties to American Samoa are the only group eligible for non-citizen national status. The status of an American Samoan is a hybrid: for example, as non-citizens, they are denied the right to vote and run for federal or state office outside American Samoa; but as nationals, they can serve in the

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

American military, receive most federal benefits, travel freely in the United States, and cannot be removed as aliens.

Koonwaiyou was born in 1967 in Western Samoa to a Western Samoan father and an American Samoan mother. His mother is now a non-citizen national, but she only became eligible under the 1986 amendments and did not attain her status until after Koonwaiyou was born. Koonwaiyou sought a declaration that his mother's status qualifies him to be a non-citizen national. The district court held that, under the 1986 amendments, Koonwaiyou's mother's status as a national commenced only on the date it was conferred and was not retroactive to her date of birth. The court therefore found Koonwaiyou did not qualify to be a non-citizen national.

To answer the narrow question whether Koonwaiyou qualifies for non-citizen national status, the panel wrote that it must decide whether those individuals, like Koonwaiyou's mother, who qualify under but were born *before* the 1986 amendments are eligible for the same non-citizen national status as those born on or *after* the amendments. The Government's position was that the 1986 amendments should apply only prospectively, such that this non-citizen national status could only be conferred on those born on or after the amendments.

The panel concluded that the text of the 1986 amendments makes clear that Congress intended for the addition to apply retroactively and to bestow the same status on those born before, on, or after the date of enactment: "national[], but not citizen, of the United States at birth." 8 U.S.C. § 1408. Under this interpretation, the uncodified provision of the 1986 amendments—which provides that the amendments "shall apply to persons born before, on, or after

the date of the enactment" of the amendments—could be easily harmonized with the text of § 1408, giving every word in the amendments meaning. The uncodified section also provided the necessary clear statement regarding retroactivity.

The panel observed that the uncodified section clarified that those qualifying under but born before its enactment do not automatically become non-citizen nationals; instead, they attain status only after proving that they meet certain requirements. However, the panel concluded that it went too far to conclude, as the Government argued, that this provision was a subtle attempt by Congress to bestow a different status on individuals qualifying under but born before the 1986 amendments. The panel explained that this interpretation clashes with the text and structure of § 1408: it would require reading the prefatory "at birth" language out of § 1408 for one group of individuals.

The panel further explained that its interpretation is consistent with similar provisions in the INA, where Congress specified whether persons achieve status "at birth" or as of a particular date. The panel also wrote that its interpretation was consistent with the purpose of the 1986 amendments, which the parties agreed was to expand the class of American Samoans eligible to become non-citizen nationals. Finally, the panel explained that the limited legislative history supported the panel's view that Congress aimed to establish equal status for all American Samoans who qualify for non-citizen national status under § 1408.

Applying its interpretation, the panel concluded that Koonwaiyou's mother's non-citizen national status extends back to her birth and, as a result, that Koonwaiyou qualifies for non-citizen national status too.

## COUNSEL

Aaron Korthuis (argued), Matt Adams, and Margot Adams, Northwest Immigrant Rights Project, Seattle, Washington; Tim Warden-Hertz, Northwest Immigrant Rights Project, Tacoma, Washington; for Plaintiff-Appellant.

Lauren E. Fascett (argued), Senior Litigation Counsel; Alexandra L. Yeatts, Legal Intern; Elianis Perez, Assistant Director; William C. Peachey, Director, District Court Section; Brian M. Boynton, Principal Deputy Assistant Attorney General, Civil Division; Office of Immigration Litigation, United States Department of Justice; Washington, D.C., for Defendants-Appellees.

**OPINION**

KOH, Circuit Judge:

In 1986, Congress amended the Immigration and Nationality Act of 1952 ("INA") to make individuals born to only one non-citizen national parent outside the United States and American Samoa eligible to become "nationals, but not citizens, of the United States at birth." 8 U.S.C. § 1408; *see also* Pub. L. No. 99-396, § 15, 100 Stat. 837, 842–43 (1986). Congress made clear that this expanded eligibility was open to those "born before, on, or after the date" the amendments were enacted. § 15(b), 100 Stat. at 843. The question we must decide is whether those qualifying under but born before the 1986 amendments receive the same national status as those born on or after the amendments' enactment. The district court found that they do not. We find that they do, and reverse.

## I.

"All citizens of the United States are also nationals. However, some nationals are not citizens. Traditionally, only persons born in territories of the United States were non-citizen nationals." *Perdomo-Padilla v. Ashcroft*, 333 F.3d 964, 967 (9th Cir. 2003). Today, Congress has extended citizenship to individuals born in every territory, except American Samoa. *See, e.g.*, 8 U.S.C. § 1402 (defining eligibility for citizenship for those born in Puerto Rico); *id.* § 1406 (same for those born or living in the U.S. Virgin Islands); *id.* § 1407 (same for those born or living in Guam). Those with ties to American Samoa are the only group still eligible for non-citizen national status. *See id.* § 1408; *see also Perdomo-Padilla*, 333 F.3d at 967–68; Sean Morrison, *Foreign in a Domestic Sense: American Samoa*

*and the Last U.S. Nationals*, 41 Hastings Const. L.Q. 71, 84 (2013).

For the American Samoans who qualify, the status of non-citizen national is "hybrid." *Cabebe v. Acheson*, 183 F.2d 795, 797 (9th Cir. 1950). As non-citizens, "American Samoans are denied the right to vote, the right to run for elective federal or state office outside American Samoa, and the right to serve on federal and state juries." *Fitisemanu v. United States*, 1 F.4th 862, 865 (10th Cir. 2021). They are also excluded from at least some federal jobs. *See* Morrison, *supra*, at 85. But, as nationals, qualifying American Samoans can serve in the American military, receive most federal benefits, and travel freely in the United States. *See Fitisemanu*, 1 F.4th at 865; Morrison, *supra*, at 84. They are also eligible to use their time in American Samoa to satisfy some residence and physical presence requirements for naturalization, *see* 8 U.S.C. § 1436, and, even if they never become citizens, they cannot be removed as aliens, *see Hughes v. Ashcroft*, 255 F.3d 752, 756 (9th Cir. 2001).[1]

Ilai Kanutu Koonwaiyou ("Koonwaiyou") seeks non-citizen national status. Koonwaiyou was born in 1967 in Western Samoa to a Western Samoan father and an American Samoan mother. His mother is now a non-citizen national, but she only became eligible under the 1986 amendments and did not attain her status until years after Koonwaiyou was born. After the State Department rejected

---

[1] In addition to the consequences for individuals, there are active debates about whether non-citizen national status protects "the Samoan way of life" by insulating communal landownership and other local practices from constitutional scrutiny. *Tuaua v. United States*, 788 F.3d 300, 309–10 (D.C. Cir. 2015); *see also Fitisemanu*, 1 F.4th at 880–81. We are not asked to address those debates here, and we express no views on them.

his application for a certificate of non-citizen national status, Koonwaiyou filed the instant suit, seeking a declaration that his mother's status qualifies him to be a non-citizen national. *See* 8 U.S.C. § 1503(a) (conferring jurisdiction for such actions).  The district court held that, under the 1986 amendments, Koonwaiyou's "mother's status as a national of the United States commenced on the date it was conferred and was not retroactive to her date of birth."  The court therefore found Koonwaiyou did not qualify to be a non-citizen national and granted the Government's motion to dismiss.  Koonwaiyou timely appealed.

## II.

We review a district court's grant of a motion to dismiss *de novo*.  *See Dougherty v. City of Covina*, 654 F.3d 892, 897 (9th Cir. 2011).  The question before us is a narrow one: whether Koonwaiyou qualifies for non-citizen national status.  Specifically, we must decide whether those individuals, like Koonwaiyou's mother, who qualify under but were born before the 1986 amendments are eligible for the same non-citizen national status as those born on or after the amendments' date of enactment.

## A.

"As always, we begin with the text."  *Sw. Airlines Co. v. Saxon*, 142 S. Ct. 1783, 1789 (2022).  The 1986 amendments modified 8 U.S.C. § 1408, the U.S. Code provision that governs non-citizen national eligibility for those with ties to American Samoa, which is known in the INA as the

"outlying possessions of the United States." 8 U.S.C. § 1101(a)(29).**[2]** Section 1408 reads:

> [T]he following shall be nationals, but not citizens, of the United States at birth:
>
> > (1) A person born in an outlying possession of the United States on or after the date of formal acquisition of such possession;
> >
> > (2) A person born outside the United States and its outlying possessions of parents both of whom are nationals, but not citizens, of the United States, and have had a residence in the United States, or one of its outlying possessions prior to the birth of such person;
> >
> > (3) A person of unknown parentage found in an outlying possession of the United States while under the age of five years, until shown, prior to his attaining the age of twenty-one years, not to have been born in such outlying possession; and
> >
> > (4) A person born outside the United States and its outlying possessions of parents one of whom is an alien, and the other a national, but not a citizen, of the

---

[2] In the INA, "[t]he term 'outlying possessions of the United States'" also includes Swains Island. 8 U.S.C. § 1101(a)(29). Because Swains Island is "a part of American Samoa" under federal law, we refer to the "outlying possessions" as American Samoa throughout. 48 U.S.C. § 1662.

United States who, prior to the birth of
such person, was physically present in the
United States or its outlying possessions
for a period or periods totaling not less
than seven years in any continuous period
of ten years—

> (A) during which the national parent
> was not outside the United States or
> its outlying possessions for a
> continuous period of more than one
> year, and

> (B) at least five years of which were
> after attaining the age of fourteen
> years.

The proviso of section 1401(g) of this title
shall apply to the national parent under this
paragraph in the same manner as it applies to
the citizen parent under that section.

8 U.S.C. § 1408.

Stripped of conditions not relevant here, the text of §
1408 is straightforward. The first three subsections extend
non-citizen national status to (1) individuals born in
American Samoa, (2) those born outside the United States or
American Samoa to two non-citizen national parents, and (3)
those found in American Samoa before the age of five whose
parents are unknown. *See* 8 U.S.C. § 1408(1)–(3). All three
of these subsections originated in the Nationality Act of
1940, were carried over in modified form to the INA, and
have remained largely unchanged since. *Compare*
Nationality Act of 1940, Pub. L. No. 76-853, § 204, 54 Stat.
1137, 1139, *and* Immigration and Nationality Act of 1952,

Pub. L. No. 82-414, § 308, 66 Stat. 163, 238, *with* 8 U.S.C. § 1408(1)–(3). The fourth subsection, added by the 1986 amendments, expanded eligibility to those persons born outside the United States or American Samoa to only one non-citizen national parent. *See* 8 U.S.C. § 1408(4); Pub. L. No. 99-396, § 15(a), 100 Stat. 837, 842–43 (1986).

The structure of § 1408 strongly suggests that individuals who qualify under any of the four subsections attain the same status. Section 1408 states that "the following shall be nationals, but not citizens, of the United States at birth" and then lists the four subsections without differentiation. To bestow a prospective status only on those qualifying under the fourth subsection but born before its enactment, as the Government argues, we would have to read the phrase "at birth" out of § 1408 for this subgroup of individuals. Doing so would violate the well-established canon against surplusage, which "requires a court, if possible, to give effect to each word and clause in a statute." *United States v. Lopez*, 998 F.3d 431, 440 (9th Cir. 2021). Thus, even though the fourth subsection was added much later, nothing in § 1408 indicates that any of those who qualify under it attain a different status. Instead, the structure of § 1408 indicates that all become "nationals, but not citizens, of the United States at birth." 8 U.S.C. § 1408.

This interpretation is consistent with an uncodified section of the 1986 amendments. That section reads:

> (b) The amendment [that adds § 1408(4)] shall apply to persons born before, on, or after the date of the enactment of this Act. In the case of a person born before the date of the enactment of this Act —

> (1) the status of a national of the United States shall not be considered to be conferred upon the person until the date the person establishes to the satisfaction of the Secretary of State that the person meets the requirements of [§1408(4)] of the Immigration and Nationality Act, and
>
> (2) the person shall not be eligible to vote in any general election in American Samoa earlier than January 1, 1987.

§ 15(b), 100 Stat. at 843. Though not included in the U.S. Code, this uncodified section is binding law. *See U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am.*, *Inc.*, 508 U.S. 439, 448 (1993) (emphasizing that provisions in the Statute at Large retain the force of law even if they are omitted from the U.S. Code); *see also Stephan v. United States*, 319 U.S. 423, 426 (1943) (holding that "the Code cannot prevail over the Statutes at Large when the two are inconsistent"). As such, when interpreting the statutory text "as a whole," we must consider it. *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991).

The uncodified section confirms our interpretation. First, the uncodified section makes clear that § 1408(4) applies retroactively. A law is retroactive if "the new provision attaches new legal consequences to events completed before its enactment." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 270 (1994). Because applying a law retroactively raises serious concerns about notice, fairness, and equality, we normally employ a strong presumption against it. *See Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 37–38 (2006). But the presumption against retroactivity only applies if Congress has not "expressly prescribed the

statute's proper reach." *Landgraf*, 511 U.S. at 280. In other words, where Congress is clear that a new law applies to actions that took place before its enactment, our judicial presumption yields to statutory text. *See Valiente v. Swift Transp. Co. of Ariz., LLC*, 54 F.4th 581, 585 (9th Cir. 2022).

In the uncodified section of the 1986 amendments, Congress provided the necessary clear statement. The uncodified section clearly states that "persons born before, on, or after the date of the enactment of this Act" qualify for national status under § 1408(4). § 15(b), 100 Stat. at 843. This language distinguishes the 1986 amendments from similar statutes that clearly specify Congress's intent to limit retroactivity to a particular class of individuals, *see Wolf v. Brownell*, 253 F.2d 141, 142 (9th Cir. 1957) (holding that a law granting citizenship "at birth" was not retroactive to all individuals when Congress specifically limited its retroactivity to children born between specified dates to a specific class of qualifying parents), or contain no clear statement about their retroactive reach, *see Friend v. Holder*, 714 F.3d 1349, 1351–52 (9th Cir. 2013) (holding that a law granting citizenship "as of the date of birth" was not retroactive because it provided no indication that it applied to those born before its enactment). The Government's claim that the presumption against retroactivity still applies if the 1986 amendments are read to stretch non-citizen national status back to "birth" for those born before its enactment is unpersuasive. It conflates an interpretative question, "the point at which one's . . . status, if successfully established, takes effect," with the retroactivity question, "whether the statute applies to individuals born before the . . . Act's effective date." *Friend*, 714 F.3d at 1352. Only the latter is subject to the presumption against retroactivity,

which the clear statement in the uncodified section of the 1986 amendments easily overcomes.[3]

Second, the uncodified section of the 1986 amendments clarifies that those qualifying under but born before its enactment do not automatically become non-citizen nationals. Instead, they are "considered to be" non-citizen nationals only after they prove to the Secretary of State that they were in fact born to a non-citizen national parent who met the physical presence requirements listed in § 1408(4). § 15(b)(1), 100 Stat. at 843. Moreover, the uncodified section is clear that no matter how quickly people born before the 1986 amendments applied for national status, they could not obtain one of the benefits of national status—the right to vote in elections in American Samoa—until approximately four months after the 1986 amendments became law. *See* § 15(b)(2), 100 Stat. at 843 (indicating that people born before the amendments were enacted "shall not be eligible to vote in any general election in American Samoa earlier than January 1, 1987"). As the Government emphasizes, no other group who qualifies for non-citizen

---

[3] It is notable that, despite relying on the presumption against retroactivity, the Government is silent on the second step of the well-established retroactivity test. *See Valiente*, 54 F.4th at 585 (summarizing "two-step test"). Under that step, if Congress has not provided a clear statement about a statute's reach, we must decide if "the . . . statute 'would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed'" when applied retroactively. *Tyson v. Holder*, 670 F.3d 1015, 1018 (9th Cir. 2012) (quoting *Landgraf*, 511 U.S. at 280). These considerations actually support our interpretation: the 1986 amendments when applied retroactively enhance rights, do not increase liability for past conduct, and impose new duties only on those who choose to become non-citizen nationals.

national status under § 1408 is subject to this kind of certification regime or conferral delay.

But it goes too far to conclude, as the Government argues, that this portion of the amendments was a subtle attempt by Congress to bestow a different status on individuals qualifying under but born before the 1986 amendments' enactment. That interpretation clashes with the text and structure of § 1408: as already described, it would require us to read the prefatory "at birth" language out of § 1408 for one group of individuals. To be sure, "[t]he canon against surplusage is not an absolute rule," and such a reading might be required if there were no other way to reasonably parse the statute's text. *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 385 (2013). Here, though, the codified and uncodified portions of the 1986 amendments can easily be harmonized. Congress created a scheme where all those eligible under § 1408(4) receive the same status, but those born before the amendments' enactment are required to prove their eligibility before their status is "considered to be conferred upon" them. § 15(b)(1), 100 Stat. at 843. In other words, the 1986 amendments can be read to give every word meaning if we understand the uncodified provisions as establishing a procedure for those born before the enactment of the 1986 amendments to attain the same status of "national[], but not citizen[], of the United States at birth" as everyone else who qualifies under § 1408.

**B.**

This interpretation of the 1986 amendments is confirmed by looking to other indicia of meaning.**[4]** We start with similar sections in the INA. *See Cheneau v. Garland*, 997 F.3d 916, 920 (9th Cir. 2021) (en banc) ("As part of our statutory analysis, '[w]e also look to similar provisions within the statute as a whole and the language of related or similar statutes to aid in interpretation.'" (quoting *United States v. LKAV*, 712 F.3d 436, 440 (9th Cir. 2013))). Time and again in analogous provisions, Congress specified whether persons achieve their status "at birth" or as of a particular date. Section 1401, for example, lists eight categories of persons, all of whom "shall be nationals and citizens of the United States *at birth*." 8 U.S.C. § 1401 (emphasis added). Section 1402, in contrast, makes clear that individuals born in Puerto Rico on or after April 11, 1899 but before January 13, 1941 cannot become "citizens of the United States at birth," but only "citizens of the United States as of January 13, 1941." *Id.* § 1402. Indeed, in its treatment of individuals born in the past or current territories of Puerto Rico, *id.*, Alaska, *id.* § 1404, Hawaii, *id.* § 1405,

---

[4] The Government claims that the State Department's Foreign Affairs Manual corroborates its prospective-only interpretation. *See* 8 U.S. Dep't of State, Foreign Affairs Manual § 308.9-5(e). We have previously held that the Foreign Affairs Manual is not entitled to deference. *See Scales v. I.N.S.*, 232 F.3d 1159, 1166 (9th Cir. 2000) (citing *Christensen v. Harris County*, 529 U.S. 576, 587 (2000)). Consistent with our prior finding, there is no indication that the State Department arrived at its interpretation of § 1408 after engaging in any of the careful processes associated with the traditional modes of administrative law. *See id.* We cannot even rely on the Manual for its persuasive value: it offers only "conclusory statements . . . with no analysis," providing no reasoning to support its reading of § 1408. *NLRB. v. SW Gen., Inc.*, 580 U.S. 288, 308 (2017).

and the Virgin Islands, *id.* § 1406, Congress carefully shifted—often in the same section—between providing citizenship "at birth" and as of a particular date.

It is significant, then, that § 1408 includes no equivalent temporal toggle. "[W]here Congress includes particular language in one section of a statute but omits it in another . . . it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Nken v. Holder*, 556 U.S. 418, 430 (2009) (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 432 (1987)). Here, the surrounding code provisions make clear that Congress knew how to include the prospective-only language that the Government would have us read into the 1986 amendments. It also confirms that Congress chose, instead, to make non-citizen national status uniformly begin "at birth" in § 1408.

Next, we turn to the purpose of the 1986 amendments. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (relying on purpose "readily apparent from [statute's] text"). The parties agree that Congress enacted the 1986 amendments to expand the class of American Samoans eligible to become non-citizen nationals to include those born outside the United States to only one non-citizen national parent. By making this statute retroactive, Congress indicated a further intent to eliminate, once and for all, the gap in eligibility for people born abroad to a single non-citizen national parent. *See* § 15(b), 100 Stat. at 843; *see also Landgraf*, 511 U.S. at 267–68 (describing one "legitimate purpose[]" of retroactive legislation as "giv[ing] comprehensive effect to a new law Congress considers salutary").

The Government's preferred interpretation, though, would have the amendments perpetuate the very problem the

statute was designed to solve.   It would deny non-citizen national status to individuals, like Koonwaiyou, born abroad to a person recognized under law as a national, thereby continuing to block access to non-citizen national status to a subgroup of individuals Congress enacted the 1986 amendments to help.  We find it implausible, to say the least, that Congress hid a second-class non-citizen national status within a statute explicitly expanding eligibility for American Samoans to become non-citizen nationals.

More than that, the Government's interpretation would split the status of families like Koonwaiyou's in two: children born before a parent claimed non-citizen national status would never be eligible, while those born after would qualify and could pass their status to their children.  Absent any apparent reason for such a division within the same family, that consequence would contravene not just congressional purpose, but also common sense.  *See Abramski v. United States*, 573 U.S. 169, 179 (2014) (emphasizing that "'structure, history, and purpose' . . . not to mention common sense" all play a role in statutory interpretation (quoting *Maracich v. Spears*, 570 U.S. 48, 76 (2013))).

Finally, we consider the legislative history.  Where, as here, a statute's text makes us sure of its meaning, we need not look to legislative history to confirm our reading.  *See Hughes*, 255 F.3d at 759–60.  We note, though, that nothing in the legislative history supports the Government's prospective-only interpretation.   For example, when members of Congress discussed the uncodified section of the 1986 amendments, they did not treat it as a temporal limit on non-citizen national status.  Instead, supporters treated this section as a procedural hurdle, repeatedly urging the Secretary of State to be sensitive to the record-gathering

difficulties of those born before 1986.  *See, e.g.*, 132 Cong. Rec. H18619 (Aug. 1, 1986) (statement of Rep. Udall) ("Many of the individuals who would qualify for U.S. nationality under this provision are older and desirable records may not exist to substantiate the residency of their parents.  In these cases, officials of the Department of State should . . . use liberal discretion . . . to qualify every individual who can reasonably be presumed to be eligible."); *id.* at H18624 (statement of Mr. Sunia, non-voting representative from American Samoa) (describing need for "the Secretary of State to understand the circumstances of an applicant who will have to supply proof of his or her parent's . . . residence so many decades ago").  Indeed, if anything, the limited legislative history supports our view that Congress aimed to establish equal status for all American Samoans who qualify for non-citizen national status under § 1408.  *See id.* at H18619 (statement of Rep. Udall) ("This provision would enable these residents of American Samoa to take their place with other members of their community.").

## III.

At bottom, the Government's strained statutory construction and nullification of key words in the statute result in the creation of second-class non-citizen national status for those qualifying under but born before the amendments and differential treatment of their children based on whether the children were born before or after their parent obtained the non-citizen national status.  All this in a statute that was explicitly intended to retroactively expand, rather than restrict, eligibility for non-citizen national status.

We reject the Government's interpretation in favor of the plain meaning of the 1986 amendments.  The text of the

amendments makes clear that Congress intended for it to apply retroactively and to bestow the same status on those born before, on, or after the date of enactment: "national[], but not citizen, of the United States at birth."   8 U.S.C. § 1408.   Under our interpretation, the uncodified procedural provision of the 1986 amendments can be easily harmonized with the long-standing text of § 1408, giving every word in the 1986 amendments meaning.   Our interpretation is also consistent with similar provisions in the INA, with the statute's purpose, and with the available legislative history. Our interpretation leads us to conclude that Koonwaiyou's mother's non-citizen national status extends back to her birth and, as a result, that he qualifies for non-citizen national status too.

The judgment of the district court is reversed, and we remand for further proceedings consistent with this opinion.

**REVERSED.**